**Harold HAUPT, Plaintiff,**

v.

**INTERNATIONAL HARVESTER CO. and Michael McGrath, Defendants.**

No. 82C 7299.

United States District Court, N.D. Illinois, E.D.

Sept. 22, 1983.

mark cannot fairly be assumed to refer to the speaker's immigration status.

Gregory A. Stayart, Vytas P. Ambutas, Sullivan & Associates, Ltd., Chicago, Ill., for plaintiff.

Laurence H. Levine, Mark A. Harris, Latham, Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., Allen L. Shulman, Conklin & Adler, Ltd., Oak Brook, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harold Haupt ("Haupt") sues International Harvester Co. ("IH") and Michael McGrath ("McGrath"), alleging:

1. IH discharged him from his job because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 [1] (Count I).

2. McGrath tortiously interfered with Haupt's employment contract with IH (Count II).

IH has moved for summary judgment on Count I, asserting two time-related arguments:

1. Haupt did not file a timely charge with the Equal Employment Opportunity Commission ("EEOC").

2. Haupt did not file this action within the applicable statute of limitations period.

For the reasons stated in this memorandum opinion and order IH's motion is granted.[2]

Because Illinois is a "deferral state" under Section 633(b) Haupt had 300 days "after the alleged unlawful practice occurred" to file his charge with EEOC. Section 626(d)(2).[3] IH admits (R.Mem. 3–4) Haupt filed his EEOC charge April 8, 1982.[4]

Under Section 626(e)(1) (incorporating by reference 29 U.S.C. § 255) Haupt had two years "after the cause of action accrued" to commence this action—and three years if his action "ar[ose] out of a willful violation."[5] Haupt filed this action November 30, 1982.

Both time clocks thus share the same beginning: when the "unlawful practice occurred" and therefore Haupt's "cause of action accrued." And that is the center of the present dispute. Harvester claims it is entitled to a judgment *as a matter of law* that the time clock ran out in one or both respects: that April 8, 1982 was more than 300 days, or November 30, 1982 was more than two years, from that beginning date. Though the parties dispute the beginning date (and though IH's own analysis of the subject is flawed), IH's claim must ultimately prevail on the first of those two calculations.

It is uncontroverted Haupt was told sometime before November 12, 1980 his job as an IH pallet control coordinator would be abolished November 30, 1980. February 7, 1983 Affidavit of IH Personnel Manager

---

1. ADEA sections will be cited simply as "Section—," indicating section numbers under Title 29.

2. On May 31, 1983 Judge Flaum, to whom this action was then assigned, issued a memorandum order deferring consideration of IH's motion pending Haupt's showing he had filed a state charge (a statutory prerequisite to suit). Because Haupt has misunderstood Judge Flaum's statement "count one of this action is held in abeyance" as a disposition of that count, he has filed a Motion To Reinstate. This opinion has considered the facts Haupt adduces in the Appendices to that motion, but no "reinstatement" of Count I is of course required (and hence Haupt's motion itself is moot).

3. Section 626(d)(1) provides for a 180-day filing period when Section 633(b) is inapplicable. IH (Mem. 2 n. *) assumed the 300-day period when it believed Haupt had not filed *any* EEOC charge at all. Now that it is clear Haupt *did* file an EEOC charge (see n. 4), it is also clear the 300-day period is indeed the relevant one.

4. IH refers to an April 4, 1982 filing date, but Haupt's documents clearly show the April 8 date. App. B to Motion To Reinstate. Earlier the parties had disputed whether or not Haupt filed any state agency charge (see Judge Flaum's May 26, 1983 memorandum opinion). Haupt has since submitted documents showing he filed with Illinois' Department of Human Rights April 12, 1982. App. B to Motion To Reinstate.

5. Haupt (Ans. Mem. 8–9) argues the applicability of the longer period on the basis of his pleadings, but IH disagrees (R. Mem. 13–14). This Court need not resolve that dispute in light of its discussion below.

Mary Frestel ("Frestel Aff.") ¶ 5; Haupt's February 18, 1983 Affidavit ("Haupt Aff.") ¶ 17. Focusing alternatively on that mid-November 1980 date of notification and on the November 26, 1980 date Haupt last worked,[6] IH says (Mem. 6, 9) Haupt had to file (1) his EEOC charge before mid-September 1981 and (2) this action some days before November 30, 1982.

But Haupt tells a more complex story. In a November 12, 1980 letter to Harvester Board Chairman A.R. McCardell ("McCardell") (written just after Haupt had been informed of his pending layoff), Haupt reported various irregularities in his department involving McGrath. Haupt Aff.App. A; Frestel Aff.Ex. A. Haupt says (Aff. ¶ ¶ 21–41) that letter triggered a series of communications with various IH officials in which he was told (1) not to report to work pending IH's completion of an investigation of McGrath, (2) to go on layoff status as of November 26, 1980 and (3) to await word from personnel officials about possible employment openings at IH. Haupt also says (*id.* ¶ 42) he wrote a January 20, 1982 letter to McCardell after those personnel officials had been unresponsive to his various and repeated inquiries over the intervening thirteen months. *Id.* App. B; Frestel Aff. Ex. B. That 1982 letter (1) pleaded Haupt's contribution to IH on the McGrath matter—McGrath had resigned December 5, 1980 in the face of IH's investigation (Haupt Aff. ¶ 30)—and (2) asked McCardell's aid in getting better treatment by Harvester's personnel officials. In response

to that letter a Harvester Vice President wrote to Haupt February 11, 1982, informing him both (1) the supplemental unemployment benefits ("SUB") following his layoff[7] and (2) his employment with IH would be terminated March 1, 1982. *Id.* App. C. Accordingly Haupt says (Ans. Mem. 4–5) February 11 or March 1, 1982 was the date on which the administrative and statutory clocks started ticking—rendering both his EEOC charge and this action timely.

Both IH and Haupt have oversimplified matters. As the party opposing summary judgment, Haupt is entitled to reasonable inferences in his favor from the facts submitted in support of and opposition to the motion. *Thornton v. Evans,* 692 F.2d 1064, 1074–75 (7th Cir.1982). That concept defeats IH's argument for the November 1980 starting dates, for Haupt Aff. ¶ 28 says:

> Mr. Evans eventually told me to come into the company on November 26, 1980. He said that Mr. McGrath would not be in on that day. I was told to go through the normal process of a lay off, even though I was still an employee, so as not to make Mr McGrath suspicious. He said that the investigation was still going on.

Taking Haupt at his word (as it must), this Court cannot view him as having then received a "final decision" as to his employment status—so as to trigger the accrual of his action for employment discrimination. *See Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per

---

**6.** That date is apparently conceded by Frestel Aff. ¶ 7. See also Haupt Aff. ¶ 28.

**7.** Haupt's unemployment compensation plus his SUB payments concededly aggregated 95% of his regular pay (R. Mem. 2 n. 2; Haupt Aff. ¶ 36). What was not clear from the parties' original filings was whether that represented Haupt's entitlement as a regular consequence of his layoff status, or whether it was instead a special arrangement designed for Haupt. In response to this Court's inquiry on that score, IH has filed the August 30, 1983 affidavit of Lawrence Siebers (its Director, Organization Planning and Development, who wrote the February 11, 1982 letter to Haupt) confirming no special deal had been made for Haupt in connection with his November 1980 layoff. *Every* laid-off non-management employee in Haupt's

classification was entitled to SUB payments that, together with regular unemployment compensation, totaled 95% of the employee's pre-termination take-home pay. And that arrangement continued as a matter of course for a year (in Haupt's case through November 1981). IH's February 1982 letter was an offer in compromise to settle Haupt's claim by granting an added two months of SUB payments in exchange for a full release. Haupt has confirmed he has nothing more to offer on the subject. What is critical for current purposes is that, both as of November 1980 and for the following year, there was *nothing* in IH's post-layoff financial arrangements to cause Haupt to believe he was being treated in any way different from any other laid-off employee.

curiam); *Delaware State College v. Ricks,* 449 U.S. 250, 257–62, 101 S.Ct. 498, 503–06, 66 L.Ed.2d 431 (1980).[8]

On the other hand, Haupt glosses over the critical significance of his own Aff. ¶ ¶ 30–33:

30. On December 8, 1980, while I was on lay off, Mr. Evans contacted me by phone. He said that Mr. McGrath had been confronted with the evidence against him. Mr. McGrath was asked to make any statement in his defense. Mr. Evans said that Mr. McGrath said nothing but resigned on December 5, 1980.

31. Mr. Evans thanked me for my cooperation.

32. I then asked Mr. Evans about my status with Harvester, and reminded him of my layoff and his promise. He said that he was in the process of checking with the Personnel Department and also with some other department heads in purchasing. Mr. Evans said he would call me in a week.

33. Mr. Evans never called me back. Instead I called him the week of December 15, 1980. I asked about my status. Mr. Evans said that there was nothing that they could do for me right away because there were no openings. I reminded him about his promise and my cooperation. This time he said that he never promised me anything.

On his own version of the facts, as of December 15, 1980 Haupt knew both that (1) IH regarded him as a regularly laid-off employee and (2) from his own perspective its action in laying him off had been age-discriminatory. On that date, then, he had received the "notification of discharge"[9] that marked the beginning of the ADEA time periods. And the possibility of recall if another job became available did not stop the time clock from beginning. *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965–66 (4th Cir.1982); *Lawson,* 683 F.2d at

---

**8.** Those cases were under Title VII, but the principles they announce are equally applicable to the related provisions of ADEA.

**9.** For employment discrimination purposes there is no distinction between termination and layoff. *See, e.g., Lawson v. Burlington Indus-*

---

864; *Wagner v. Sperry Univac,* 458 F.Supp. 505, 512–13 (E.D.Pa.1978), *aff'd,* 624 F.2d 1092 (3d Cir.1980).

Accordingly *this action* was timely filed (because it was brought less than two years after December 15, 1980), but Haupt's prerequisite *EEOC charge* was not (because it was filed more than 300 days after the same date). Though EEOC filing is not truly a jurisdictional precondition to an ADEA suit, Haupt has advanced nothing to support an equitable tolling once he had been given the December 15 notification. On Haupt's own facts, at least by December 15 it was not IH's conduct, but rather his own self-hypnosis, that led to inaction on his part instead of pursuing his claim through EEOC.

### Conclusion

There is no genuine issue as to any material fact. IH is entitled to a judgment as a matter of law. Complaint Count I is dismissed with prejudice.

---

*tries, Inc.,* 683 F.2d 862, 863–64 (4th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); *Woodburn v. LTV Aerospace Corp.,* 531 F.2d 750, 751 (5th Cir.1976) (per curiam).