Harold HAUPT, Plaintiff,

v.

**INTERNATIONAL HARVESTER CO.**
**and Michael McGrath, Defendants.**

No. 82 C 7299.

United States District Court,
N.D. Illinois, E.D.

March 2, 1984.

Gregory A. Stayart, Sullivan & Associates, Ltd., Chicago, Ill., for plaintiff.

Catherine E. Tinker, Conklin & Adler, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harold Haupt ("Haupt") originally sued International Harvester Company ("IH," his former employer) and Michael McGrath ("McGrath," his former supervisor) in connection with Haupt's discharge from IH's employment. This Court's earlier opinion, 571 F.Supp. 1043 (N.D.Ill.1983) dismissed IH as a defendant for Haupt's failure to sue within the limitations period of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. That left pending a single state-law count against McGrath, charging tortious interference with Haupt's employment contract.[1]

McGrath now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56, arguing:

    1. Haupt cannot establish the elements of tortious interference with contract under Illinois law.

    2. McGrath was privileged to advise IH to lay off Haupt.

McGrath has also moved to strike much of Haupt's evidence for failure to comply with Rule 56's evidentiary standards. McGrath's motion to strike is well taken in part, but his summary judgment motion is denied.

### Facts[2]

IH employed Haupt from October 1964 to November 1980. Beginning in January 1974 Haupt was "pallet pool coordinator" in a two-person department. He monitored the quality of pallet and container parts used in IH's operations and contracted with various suppliers for IH's requirements of those items. McGrath became Haupt's supervisor in October 1977. At McGrath's request Haupt added Jackson, Inc., which later became Buckeye Wood Products (for convenience simply "Buckeye"), as a pallet supplier. McGrath increased Buckeye's share of IH's pallet business until April 1980, when he authorized Buckeye to communicate directly with IH's material suppliers to fulfill their pallet needs. Buckeye's increasing importance as a pallet supplier, and Haupt's complaints about its perform-

---

**1.** Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

**2.** This statement implies no ultimate findings, but rather results from drawing all reasonable inferences in favor of Haupt, the nonmoving party. See *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984). As the later text discussion reflects, however, not all Haupt's tendered evidence has been taken into account.

ance, led to disputes between Haupt and McGrath.

Haupt contends McGrath intentionally and maliciously caused Haupt's discharge to preserve McGrath's improper favoritism toward Buckeye. In support of that view Haupt presents evidence showing:

1. In May 1978 McGrath caused or approved the reduction in Haupt's job classification from Grade 12 to Grade 6, which did not change his duties or salary but made him a prime candidate for layoff. Haupt Aff. ¶¶ 31–34.

2. In April 1980 Haupt wrote a memo to McGrath's supervisor Philip Gigliotti ("Gigliotti") opposing McGrath's proposal to confer all IH's pallet business on Buckeye and to authorize Buckeye's direct solicitation of IH's material suppliers. McGrath prohibited Haupt from sending future memos without prior approval. Haupt Aff. ¶¶ 67–72. Only a few days later McGrath gave Haupt the first written performance appraisal ever given Haupt during his tenure as pallet pool coordinator—and the appraisal was substandard (Haupt's prior performance evaluations had been favorable). Haupt Aff. ¶¶ 36–38 and App. E.

3. McGrath's April 1980 plan, when implemented, reduced the importance of Haupt's job and entrenched Buckeye as a pallet supplier.

4. Haupt noted various complaints with Buckeye's performance, Haupt Aff. ¶¶ 46–53, and on one occasion detailed the defects of one shipment in a memo, Haupt Aff. ¶¶ 54–57 and App. O. McGrath advised Haupt not to circulate the memo. Haupt Aff. ¶¶ 58–59. Haupt noted and reported a whole series of indications of dissatisfaction with Buckeye pallets, but McGrath never took any action against Buckeye. Haupt Aff. ¶¶ 65–66.

5. McGrath's superior Gigliotti inquired of McGrath about the feasibility of eliminating Haupt's position, and McGrath responded May 9, 1980 he did not believe the position could be eliminated unless he could get a computer to assist him with recordkeeping. Robert Andrews ("Andrews") Feb. 3, 1984 Aff.Ex. B. Shortly thereafter however McGrath reversed himself and advised Gigliotti Haupt's position could be eliminated. Gigliotti Jan. 23, 1984 Aff. ¶ 5.

6. When Haupt was discharged he brought McGrath's relationship with Buckeye to the attention of IH's management. When confronted with evidence of impropriety McGrath resigned. Gigliotti Jan. 23, 1984 Aff. ¶¶ 3–4.

McGrath does not deny (as he cannot, given the operative principles under Rule 56) the reasonable inference he desired Haupt's discharge as part of McGrath's coverup of his relationship with Buckeye. Instead he contends the actual reason Haupt was laid off was IH's deteriorating financial condition. See Lawrence Siebers Aff.; Andrews Dec. 2, 1983 Aff.; Gigliotti Dec. 2, 1983 Aff.

### Motion To Strike Haupt's Submission

■ Haupt's evidentiary presentation consists of his own lengthy affidavit (with 21 exhibits) plus three short affidavits by IH employees disclaiming knowledge of McGrath's motivation. During the course of the summary judgment proceedings McGrath moved to strike Haupt's affidavit and its exhibits in their entirety. Of the 100 paragraphs in Haupt's affidavit, McGrath contends:[3]

1. Those mentioning the 21 exhibits (some 24 in number) fail to lay a sufficient foundation for the admission of those exhibits.[4]

*Clinton v. Ins. Co. of North America,* 606 F.2d 760, 766 (7th Cir.1979) (citations omitted):

> In proceedings under rule 56(c), documents and exhibits identified by affidavit may be submitted to support a motion for summary judgment.

---

**3.** Of course some paragraphs are vulnerable to more than one of McGrath's attacks.

**4.** McGrath's argument *none* of the exhibits can be admitted into evidence because they are unsworn and uncertified has no merit, because Haupt's affidavit itself is sworn to. As our Court of Appeals stated in *First Nat'l Bank Co. of*

2. Some 40 paragraphs are not based on personal knowledge and, where they contain conclusions or opinions, do not demonstrate those assertions are helpful and rationally based (see Fed.R.Evid. 701).

3. Twelve paragraphs contain inadmissible hearsay.

4. Five paragraphs are irrelevant.

Because Haupt relies almost entirely on his own affidavit, granting McGrath's motion to strike would eviscerate Haupt's position. Nonetheless such action is warranted when "inadmissible matter is so interwoven or inextricably combined with the admissible portions that it is impossible, in the practical sense, to separate them" (*Southern Concrete Co. v. United States Steel Corp.*, 394 F.Supp. 362, 381 (N.D.Ga.1975)).

There are indeed serious problems with the admissibility of much of the material in Haupt's affidavit. It is arranged as a narrative in which Haupt explains the facts of his case and the manner in which they came to his attention.[5] Except for the three short affidavits, no attempt has been made to present testimony obtained directly from Haupt's sources. Moreover the narrative is never interrupted to provide a foundation for,[6] or even describe, the attached exhibits. Instead the word "Appendix" and some identifying letter are placed in parentheses at various points in the affidavit, and the reader is required to infer from the context of the parentheses the nature and predicate for admissibility of the referenced exhibit.

▮ Two factors however counsel against striking Haupt's affidavit in its entirety:

1. McGrath should not be granted summary judgment without first affording Haupt the opportunity to cure merely formal deficiencies. See *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980).

Considerations of judicial (and litigants') economy thus suggest it would be better to resolve the underlying summary judgment motion on the present papers if possible. See *Jorman v. Veterans Administration*, 579 F.Supp. 1407, 1412–13 (N.D.Ill.1984).

2. Rule 56's requirement that reasonable inferences be drawn in favor of the party opposing summary judgment (see *Korf*, 726 F.2d at 1226 (can be applied to the construction of Haupt's affidavit itself. In many instances the nature of the exhibits or the existence of personal knowledge can reasonably be inferred from the affidavit's own context.

Thus it is necessary to consider each of McGrath's objections individually.

This Court has done so. There is no need to rule specifically on each objection, for this opinion's earlier statement of facts did not rely on any evidence this Court has found inadmissible, and that residuum of facts is sufficient to preclude summary judgment for McGrath. It is true Haupt has no personal knowledge of the reasons for McGrath's resignation, and thus no evidence in Haupt's affidavit on that subject would survive the motion to strike. Nonetheless the belatedly filed Gigliotti affidavit suffices for that purpose.

### Elements of Tortious Interference

Illinois law has long recognized not only the conventional tort of interference with contract rights but the related tort (with less stringent proof requirements) usually labeled interference with advantageous relationships or with business relationships or expectancies. *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill.App.3d 359, 363, 300 N.E.2d 331, 333 (3d Dist.1973) listed the four elements required under Illinois law to state a cause of action for such

---

Indeed McGrath properly followed the same procedure in submitting his exhibits.

5. This is not to say Haupt has provided a Joycean stream-of-consciousness narrative. His presentation is both orderly and readily understandable.

6. In one obviously improper attempt at self-authentication of a document, Haupt Aff. ¶ 98 offers a memo by an IH manager into evidence solely on the assertion Haupt obtained it from his own attorney in the course of this litigation.

intentional interference with "the reasonable expectation of economic advantage":

■ the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy;
■ knowledge of the relationship or expectancy on the part of the interferer;
■ an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and [4] resultant damage to the party whose relationship or expectancy has been disrupted.

Haupt of course prefers to ignore that more expansive tort, concentrating on the inducing-breach-of-contract theory alone. For the first part of his summary judgment argument McGrath thus contends Haupt cannot establish either the first or the third stated element in *contract* terms. As the following discussion reflects, that contention is built on a quicksand base and must collapse.

■ As to the first element, the existence of a valid business relationship, McGrath points out Haupt was an at-will IH employee without a written employment contract. McGrath then argues an at-will employment relationship cannot be tor-

tiously interfered with because it was not enforceable in the first instance.[7]

Of course *City of Rock Falls* reveals the flaw in McGrath's analysis: Enforceability of the underlying contract is not required. *TAD, Inc. v. Siebert*, 63 Ill.App.3d 1001, 1006, 20 Ill.Dec. 754, 758, 380 N.E.2d 963, 967 (1st Dist.1978)[8] reinforces the proposition:

> [W]here there is malicious interference with an employment contract, it is immaterial whether it is for a fixed period or a contract terminable at will if both parties would have been willing and desirous of continuing the employment under that contract for an indefinite period of time. (*London Guarantee & Accident Co. v. Horn* (1903), 206 Ill. 493, 507, 69 N.E. 526, 531.)

Thus Haupt's at-will employment status does not immunize McGrath from liability.[9] McGrath seizes upon the "willingness to continue" requirement of *TAD* and argues IH was unwilling to continue Haupt's employment due to its financial condition. That contention however is really just an aspect of the requirement that a defendant must have caused the termination of the relationship to be held liable for tortious interference.

7. McGrath also argues Haupt's employment contract is unenforceable as violative of the Statute of Frauds because it cannot be performed within one year. If that argument were relevant (as it is not) it would obviously be inconsistent with Haupt's conceded at-will employment status. Because either party could terminate Haupt's employment contract without liability for breach, that contract of course is capable of being performed within one year.

8. Under familiar *Erie v. Tompkins* principles, cases from Illinois' First Appellate District would control here on any issues to which the Illinois Supreme Court has not addressed itself and as to which there is a divergence of views among the Appellate Districts. *Abbott Laboratories v. Granite State Ins. Co.*, 573 F.Supp. 193, 195 (N.D.Ill.1983).

9. *Pfendler v. Anshe Emet Day School*, 81 Ill. App.3d 818, 825, 37 Ill.Dec. 1, 4, 401 N.E.2d 1094, 1098 (1st Dist.1980) and *Titchener v. Avery Coonley School*, 39 Ill.App.3d 871, 876, 350 N.E.2d 502, 507 (2d Dist.1976) say there is no cause of action for interference with contract

where there is no liability for breach of contract. But in both cases the plaintiff could not show any reasonable expectancy of continued employment except by pointing to the enforceability of the terminated contract. *Titchener* distinguished cases in which plaintiff relied on an expectancy other than an enforceable contract (39 Ill.App.3d at 876, 350 N.E.2d at 507–08, citations omitted):

> To state this cause of action it is unnecessary to have a valid contract but it is necessary to plead a reasonable expectancy on the part of plaintiff of entering into a valid business relationship and an intentional interference by defendant which prevents the expectancy from ripening into that relationship.... Plaintiff, however, has not advanced sufficient factual allegations in her complaint to support a cause of action based on this theory.

By contrast, when a plaintiff relies on interference with an at-will employment relationship, it is presumed to be one that would have continued in effect. *Kemper v. Worcester*, 106 Ill. App.3d 121, 125, 62 Ill.Dec. 29, 32, 435 N.E.2d 827, 830 (5th Dist.1982).

■ As for the third element of causation, McGrath contends he did not cause Haupt's termination because Haupt would have been terminated in any event. In support McGrath establishes IH's management approved Haupt's termination as a cost-saving action at a time when reduction of costs was imperative to IH. But that lone fact does not rise to the level of but-for causation. It can reasonably be inferred from Haupt's presentation that he would not have been fired but for McGrath's actions.

After all, McGrath's presentation on this point applies no more to Haupt than to any other IH employee. Many but by no means all IH employees have been laid off for economic reasons. Thus a showing that economic factors applied to Haupt's resignation does not even approach what is needed to preclude any reasonable inference that McGrath caused Haupt's layoff.

### McGrath's Claim of Privilege

[10–12] Illinois courts consider privilege a defense to tortious interference, and not an element whose absence must be pleaded (or, more importantly, proved) by plaintiff. *Kemper*, 106 Ill.App.3d at 125, 62 Ill.Dec. at 32, 435 N.E.2d at 830. For the second prong of his summary judgment attack McGrath argues he has established as a matter of law a privilege to act as he did toward Haupt. Obviously McGrath as Haupt's supervisor had greater freedom to interfere with Haupt's employment than a person who did not stand in such a relationship with Haupt and IH. Equally obviously that freedom was not absolute. Illinois adheres to the doctrine, also found in defamation law, that any privilege conferred by a valid business interest is conditional in nature and is divested by a showing of "actual malice." *Arlington Heights Na-*

*tional Bank v. Arlington Heights Savings & Loan Association*, 37 Ill.2d 546, 551, 229 N.E.2d 514, 518 (1967); see also *Zeinfeld v. Hayes Freight Lines*, 41 Ill.2d 345, 349, 243 N.E.2d 217, 221 (1968) (defamation case).

McGrath claims divestiture of his conditional privilege is impossible here because Haupt's discharge was in the best interest of IH and McGrath truthfully reported that fact. Accordingly he posits no investigation of his subjective good faith is necessary or even relevant. McGrath's strongest supporting authority is IV Restatement [First] of Torts § 772 comment a, at 86 (1939), which discusses the scope of the privilege when advice is requested, the advice rendered is within the scope of the request and the advice is honest:

> If these conditions are present, it is immaterial that the actor also profits by the advice or that he dislikes the third person and takes much delight in the harm caused to him by the advice.

See also the nearly identical language in 4 Restatement (Second) of Torts § 772 comment c, at 50–51 (1979). *Bentley v. Teton*, 19 Ill.App.2d 284, 289, 153 N.E.2d 495, 498 (1st Dist.1958) and *Feeley v. McAuliffe*, 335 Ill.App. 99, 103, 80 N.E.2d 373, 375–76 (1st Dist.1948) implicitly adopted that position, holding a defendant's hostility alone does not require liability for tortious interference with contract if the defendant had acted pursuant to a legitimate right to act.

■ Three problems with McGrath's position compel this Court to reject it:

1. Even if McGrath's advice furthered IH's legitimate business objectives, that advice was not "honest" if it rested on an illegitimate ulterior motive.[10] See *Scussel v. Balter*, 386 So.2d 1227 (Fla.App.1980) (applying Restatement (Second) § 772). Advice based on

**10.** Although McGrath cites only the original version of the Restatement, Restatement (Second) § 772 actually improves his argument somewhat by giving a pass to "truthful information" as well as "honest advice." That however makes no difference here. First, even were McGrath's information to IH management viewed as "truthful," the next two numbered paragraphs in the text of this opinion would still

apply to preserve Haupt's action. Second, where the informing party's motive is as illegitimate and personal as that ascribed to McGrath, this Court would not view as "truthful" a communication that did not inform the decision-maker at IH of *all* the facts relevant to his or her decision (including McGrath's motive in seeking to torpedo Haupt)—much like the material omission concept under the securities laws.

an ulterior motive is quite different from good faith advice from which the advisor receives malicious enjoyment—in terms of the Restatement criteria, it is not "honest." For example, *Worrick v. Flora*, 133 Ill.App.2d 755, 758–59, 272 N.E.2d 708, 710–11 (3d Dist.1971) held allegations that defendant's conduct was intentional and unjustified were not sufficient to allege malice. However it went on to say (*id.* at 759, 272 N.E.2d at 711) an allegation of an illegitimate ulterior motive of defendant would have sufficed:

> *Hein v. Chrysler Corp.*, 45 Wash.2d 586, 277 P.2d 708 (1954), illustrates what we believe to be the proper application of the rule. In the *Hein* case the Zone Manager's conduct was considered wrongful when he endeavored to secure the termination of a dealer's contract in order that the dealership be available for a relative of the Zone Manager.

2. Even assuming (as McGrath urges) a finding that McGrath's advice furthered IH's legitimate business objectives forecloses the need to investigate McGrath's state of mind, McGrath has not established as a matter of law his advice was "honest" in that sense. McGrath has shown only that IH needed to cut its costs and fired Haupt in pursuit of that objective. As already discussed in connection with the causation element, a mere showing of IH's financial straits does not justify Haupt's discharge any more than it justifies the discharge of any other IH employee. What McGrath has failed to show beyond factual dispute is that Haupt's discharge was justified objectively because his wages exceeded the benefit he conferred on IH.

3. McGrath's "honest advice" defense applies (if at all) to his advice to Gigliotti that Haupt's position could be eliminated. Haupt also has established McGrath reduced his job classification, gave him a poor performance review (arguably in retaliation for whistle-blowing) and administered the department in such a way as to reduce the importance of his job. Even were McGrath's advice to Gigliotti privileged, it might reasonably be inferred McGrath's other actions against Haupt were unprivileged and actually caused Haupt's discharge. If McGrath tortiously reduced the importance of Haupt's job, obviously he cannot now hide behind the truth of his statement Haupt's job could feasibly have been eliminated for legitimate reasons.

Thus various disputed issues of material fact remain on the issue of whether McGrath's actions were privileged. Most notably, the materiality of McGrath's state of mind precludes summary judgment under the circumstances here. *Thornton v. Evans*, 692 F.2d 1064, 1075 (7th Cir.1982).

### Conclusion

Even ignoring the portions of Haupt's tendered evidence omitted from the "Facts" section of this opinion, Haupt has demonstrated the existence of disputed issues of material fact. McGrath's motion for summary judgment is denied.