On Application for Rehearing

PITTMAN, Judge.
This court’s opinion of February 3, 2012, is withdrawn and the following is substituted therefor.
Evelyn Coleman appeals from a summary judgment entered in favor of BAC Servicing (“BAC”), agent for the Secretary of Veterans Affairs, an officer of the United States of America (“the Secretary”), in an ejectment action. We affirm.

Facts and Procedural History

On November 30, 1994, Coleman and her husband obtained a loan in the amount of $93,215 from Johnson & Associates Mortgage Company (“Johnson”), to purchase a house. The Colemans executed a promissory note and a mortgage to Johnson. On May 31, 1995, Johnson assigned its interest in the mortgage to Trans Financial Mortgage Company (“Trans Financial”). On December 2, 2000, Firstar Bank, alleged to be the successor in interest to Trans Financial, assigned the mortgage to Mortgage Electronic Registrations Systems, Inc. (“MERS”), as nominee for Lehman Brothers Holdings, Inc. In support of its summary-judgment motion, BAC submitted evidence indicating that *198 MidFirst Bank had acquired possession of the note on September 17, 2005.
Coleman’s husband died on April 1, 2007, after which Evelyn Coleman used the couple’s savings and the proceeds of policies insuring her husband’s life to make the payments due on the mortgage indebtedness. According to Coleman, those funds had been depleted by February 2009, and Coleman failed to make the mortgage payments due in February, March, and April 2009. In support of its summary-judgment motion, BAC submitted evidence indicating that Midland Mortgage Company, MidFirst’s operating subsidiary, had sent Coleman a notice of default on April 8, 2009, and that an attorney retained by MidFirst had sent Coleman a notice of acceleration on July 24, 2009.
On July 28, 2009, MidFirst conveyed its interest in the property to the Secretary by special warranty deed.[1] On July 25, August 1, and August 8, 2009, notice of the foreclosure sale regarding Coleman’s property was published in The Alabama Messenger; the notice identified MidFirst as the assignee of the mortgage. On August 27, 2009, MERS, as nominee for Lehman Brothers Holdings, Inc., assigned the mortgage and “[t]he promissory note evidencing the indebtedness secured by the mortgage” to MidFirst.[2] On September 1, 2009, MidFirst purchased the property for $81,132.97 at the foreclosure sale. The same day, MidFirst’s attorney sent Coleman a demand for possession of the property.
On September 28, 2009, BAC filed a complaint in the Jefferson Circuit Court seeking to eject Coleman from the property. Coleman’s late husband was also named as a defendant. On November 11, 2009, one day after Coleman’s time for answering the complaint had expired, BAC filed an application for the entry of a default judgment against Coleman and moved to voluntarily dismiss any claim as to Coleman’s husband. On November 12, 2009, Coleman obtained counsel and answered the complaint, asserting the affirmative defenses of defective notice, defective sale, and wrongful foreclosure. On November 15, 2009, the trial court entered a default judgment against Coleman and dismissed the action as to Coleman’s husband. On November 20, 2009, the trial court set aside the default judgment against Coleman and restored the case to the active trial docket.
Following discovery, BAC moved for a summary judgment. In support of that motion, BAC submitted the following: the note; the mortgage; a notice-of-default letter dated April 8, 2009, from Midland Mortgage Company to Coleman; a notice-of-acceleration letter addressed to Coleman dated July 24, 2009, from an attorney retained by MidFirst; a sworn copy of the published foreclosure notice; certified copies of three assignments of the mortgage— from Johnson to Trans Financial, from Firstar to MERS, and from MERS to MidFirst; certified copies of MidFirst’s foreclosure deed and the special warranty deed from MidFirst to the Secretary; and the affidavit of Melissa Poage, vice president of MidFirst.
With respect to the promissory note that Coleman had executed in favor of Johnson on November 30, 1994, Poage authenticated MidFirst’s copy of the note, which had been stamped on its face with two indorse-ments. The first indorsement is stamped *199 “Without recourse, pay to the order of Trans Financial Mortgage Company. Johnson & Associates Mortgage Co., Inc., by Betty J. Knight.” The second indorsement is stamped:
“Pay to The Order of
Without Recourse
This_day of_, 19_
Trans Financial Mortgage Company /s/ James K. Oliver
James K. Oliver, Executive Vice President”
Poage stated that MidFirst had acquired its interest in the note “[p]rior to the initiation of the foreclosure made the subject of this action.”
Coleman filed a response in opposition to BAC’s summary-judgment motion, attaching, among other materials, her own affidavit; she argued that the foreclosure sale and the foreclosure deed were void for the following reasons: (1) MidFirst did not have the right to exercise the power of sale under the mortgage because, Coleman said, MidFirst was not the assignee of the mortgage or the note when it commenced the foreclosure proceedings; (2) MidFirst had failed to comply with the notice requirements in the mortgage instrument; (3) MidFirst had failed to comply with the statutory notice requirements in § 35-10-13, Ala.Code 1975, because, Coleman said, the foreclosure notice published in the newspaper on July 25, August 1, and August 8, 2009, reflected that the mortgage had been assigned to MidFirst, when, in fact, MERS had not assigned the mortgage to MidFirst until August 27, 2009; (4) MidFirst had failed to comply with its loss-mitigation program; and (5) BAC had failed to support its summary-judgment motion with evidence compliant with Rule 56, Ala. R. Civ. P. Specifically, Coleman argued that Poage’s affidavit was not based on personal knowledge and did not state how or when MidFirst had acquired an interest in the note that Coleman had executed in favor of Johnson.
BAC filed a reply to Coleman’s response and moved to strike a portion of Coleman’s affidavit. Thereafter, the trial court continued the hearing on the summary-judgment motion in order to allow the parties to brief the following issues:
“Whether mere physical possession of the promissory note in question works an assignment of the power to sell the underlying mortgage to the party who has acquired physical possession of the said promissory note; and,
“If so, then evidentiary proof of the date upon which [MidFirst] acquired physical possession of the said promissory note, which should predate the date upon which [MidFirst] commenced the process of statutory foreclosure.”
BAC filed a supplement to its summary-judgment motion, attaching a second affidavit of Poage. That affidavit stated, in pertinent part:
“MidFirst, through its operating subsidiary Midland Mortgage Co., became servicer of the loan in July 2005, at which time the original note was transferred to MidFirst. As part of the servicing transfer, MidFirst received [Coleman’s and her husband’s] loan file and conducted a review of every document contained therein. According to Mid-First’s business records, the original Coleman note was notated as present in the custodial file maintained at MidFirst on September 17, 2005. The note was endorsed in blank and MidFirst has had continuous physical possession of the note since that time. A true and correct copy of a screen print from MidFirst’s document tracking system showing the information regarding the receipt of the Coleman loan documents is attached hereto as ‘Exhibit B.’ The Coleman loan *200 is assigned Loan Number xxxx9851 as shown on the attached Exhibit B.
“MidFirst Bank, or its servicing agent, has been in possession of the collateral file since its receipt as set forth above. MidFirst Bank has therefore been a holder of the note, entitled to the money owed under the note and secured by the mortgage, since taking possession of the note endorsed in blank.”
Coleman filed a response to BAC’s supplemented motion and moved to strike Poage’s second affidavit, arguing that it failed to comply with Rule 56(e), Ala. R. Civ. P.
On August 31, 2010, the trial court entered a summary judgment in favor of BAC, setting out the reasons for its decision. Coleman filed a timely post-judgment motion on September 27, 2010. That motion was denied by operation of law on December '27, 2010, when the trial court failed to act on it within the time prescribed by Rule 59.1, Ala. R. Civ. P.[3] Coleman appealed on February 7, 2011. The supreme court transferred Coleman’s appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036,1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).

Discussion

I.
A. Coleman argues that MidFirst did not have the right to exercise the power of sale under the mortgage because MidFirst was not the assignee of the mortgage when it commenced the foreclosure proceedings. In Perry v. Federal National Mortgage Ass’n, [Ms. 2100235, March 9, 2012](Ala.Civ.App.2011), this court noted that the timing of a mortgage assignment is not determinative when the foreclosing entity acquires possession of the note before it initiates the foreclosure proceedings. That is so because
“[w]here a power to sell lands is given in any mortgage, the power is part of the security and may be executed by any
*201 person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.”
Ala.Code 1975, § 85-10-12. See also Harton v. Little, 176 Ala. 267, 270, 57 So. 851, 851 (1911) (stating that “[i]t is not at all necessary that a mortgage deed be assigned in order to enable the owner of the debt to foreclose under a power of sale”); see generally Restatement (Third) of Property: Mortgages § 5.4(a) (1997) (stating that “[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise”). Poage’s affidavit indicated that MidFirst obtained physical possession of the note on September 17, 2005, almost four years before it initiated foreclosure proceedings against the Campbells in late July 2009. In this case, as in Perry, the foreclosing entity presented evidence indicating that it became the holder of the note before it initiated the foreclosure proceedings.
B. Coleman argues, however, that BAC’s evidence as to the date MidFirst acquired the note failed to comply with Rule 56(e), Ala. R. Civ. P. That rule states, in pertinent part:
“Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.”
Coleman contends that Poage’s second affidavit failed to show that it was based on personal knowledge or that Poage was competent to testify about the matters asserted in the affidavit. The personal-knowledge and competency requirements of the rule were satisfied by the following statements in Poage’s affidavit:
“In my present position, I have direct access to the books and records of the MidFirst Bank regarding the account which forms the basis of this action. I have personal knowledge of the facts set forth in this Affidavit, and I have reviewed said relevant business books and records.
“The books and records were made in the ordinary course of the business and it was the regular course of said business to make such books and records. Said books and records relative to [Coleman’s loan] and this action were made at the time of the transaction, occurrence or event referred to therein or were made within a reasonable time thereafter, and said books and records are kept under my care, supervision, and/or control.”
See Isbell v. Alabama Power Co., 477 So.2d 281, 285 (Ala.1985) (holding that affidavit satisfied Rule 56(e) because affiant stated that he was the power-company credit manager and was basing his testimony “ ‘on personal knowledge and a thorough search of Company records’ ”). Poage, the vice president of MidFirst, stated that the books and records of MidFirst were kept under her care, supervision, and control, that she had examined those books and records, and that she had personal knowledge of the matters asserted in her affidavit. “In the absence of any evidence indicating that [Poage’s] affidavit was not based upon [her] personal knowledge, the trial court correctly considered the affidavit as evidence.” Stephens v. First Commercial Bank, 45 So.3d 735, 739 (Ala. 2010); see also id. at 739 n. 2.
Coleman also contends that the document upon which Poage relied for her conclusion that MidFirst had acquired possession of the note on September 17, 2005, *202 was not “sworn or certified” as required by Rule 56(e). That document, entitled a “Loan Document Audit,” appears to be a printout of a computer screen displaying a document that contains a checklist for review- of a loan file. Coleman’s name does not appear on the document. However, the document indicates that a loan numbered xxxx9851 was reviewed on September 17, 2005. The same loan number appears on other documents submitted by BAC in support of its summary-judgment motion, and those other documents identify the loan as Coleman’s. Poage authenticated the document by stating that “[a] true and correct copy of a screen print from MidFirst’s document tracking system showing the information regarding the receipt of the Coleman loan documents is attached hereto as ‘Exhibit B.’ The Coleman loan is assigned Loan Number xxxx9851 as shown on the attached Exhibit B.”
With respect to the requirement in Rule 56(e) that “[sjworn ... copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith,” our supreme court has stated:
“ ‘... This means that if written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document’s substance or an interpretation of its contents are insufficient....’ Wright & Miller, Federal Practice and Procedure: Civil § 2722.”
Oliver v. Brock, 342 So.2d 1, 4-5 (Ala.1976) (emphasis added). See also Welch v. Houston Cnty. Hosp. Bd., 502 So.2d 340, 343 (Ala.1987); Osborn v. Johns, 468 So.2d 103, 108 (Ala.1985). As the foregoing decisions imply, a document is deemed to be “sworn” if it is authenticated by the affiant and attached as an exhibit to the affidavit. In Haupt v. International Harvester Co., 582 F.Supp. 545, 547 n. 4 (N.D.Ill.1984), the United States District Court for the Northern District of Illinois, reviewing the analogous requirement in the federal rules of civil procedure, explained:
“[The] argument [that] none of the exhibits [referred to in Haupt’s affidavit] can be admitted into evidence because they are unsworn and uncertified has no merit, because Haupt’s affidavit itself is sworn to. As our Court of Appeals stated in First Nat’l Bank Co. of Clinton v. Insurance Co. of North America, 606 F.2d 760, 766 (7th Cir.1979) (citations omitted):
“ ‘In proceedings under rule 56(c) [, Fed.R.Civ.P.], documents and exhibits identified by affidavit may be submitted to support a motion for summary judgment.’ ”
582 F.Supp. at 547 n. 4. See also Stuart v. General Motors Corp., 217 F.3d 621, 636 n. 20 (8th Cir.2000) (holding that a collection of handwritten notes, not “authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence,” could not be considered under Rule 56, Fed.R.Civ.P.); Ramsay v. Cooper 553 F.2d 237, 240 (1st Cir.1977) (holding that “consultant’s report ... not sworn to nor accompanied by a proper affidavit [was].... not competent to be considered” under Rule 56(e), Fed.R.Civ.P.); Carey Canada, Inc. v. California Union Ins. Co., 748 F.Supp. 8, 13 (D.D.C.1990) (granting a motion to strike a memorandum because it “was neither attached to an affidavit nor certified, as required by Rule 56(e), Fed. R.Civ.P.”); Contreras v. Control Res. Corp., 680 F.Supp. 289, 292 (N.D.Ill.1988) (stating that, “[b]ecause ... documents have not been authenticated by and attached to an affidavit that meets the requirements of Federal Rule 56(c), the court cannot consider them,” and citing *203 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2722, at 59-60 (1988)).
Based on the foregoing authorities, we hold that the trial court properly considered the “Loan Document Audit,” which was attached as Exhibit B to Poage’s affidavit, in determining whether BAC made a prima facie showing that MidFirst was the holder of the note four years before it initiated foreclosure proceedings. Cf. Bank of New York v. Raftogianis, 418 N.J.Super. 328, 341, 13 A.3d 435, 445 (2010) (holding that a foreclosing entity had failed to establish when it had acquired possession of a note because, “[w]hile the copy of the note ... did contain [a] blank endorsement ..., there was no information provided as to when the note was indorsed, when the note was physically transferred, or where the note was being held”).
C. Citing Byrd v. MorEquity, Inc., 94 So.3d 378 (Ala.Civ.App.2012), Coleman contends that the trial court erred in entering a summary judgment in favor of BAC because, she says, the evidence as to when MidFirst acquired its interest in the note was in conflict. Coleman maintains that BAC’s own evidence created a genuine issue of material fact as to whether MidFirst became entitled to exercise the power of sale in the mortgage by virtue of its obtaining physical possession of the note, a bearer instrument, on September 17, 2005, or whether MidFirst received an interest in the note by virtue of the written “transfer and assignment” from MERS on August 27, 2009.
In Byrd, this court reversed a summary judgment in favor of MorEquity, the ejectment plaintiff, because MorEquity presented contradictory evidence regarding the date on which it had been assigned the Byrds’ mortgage. In support of its summary-judgment motion, MorEquity submitted one affidavit stating that the mortgage had been assigned to it on April 20, 2009, and another affidavit stating that the mortgage had been assigned to it on December 30, 2009. Because MorEquity had initiated foreclosure proceedings against the Byrds in mid-December 2009, the date of the mortgage assignment was crucial in establishing MorEquity’s authority to exercise the power of sale in the mortgage. Byrd is distinguishable and does not mandate a reversal in this case.
Byrd dealt with a foreclosing entity whose source of authority to exercise the power of sale in a mortgage was its status as the assignee of the mortgage. Because a mortgage is a conveyance of legal title in Alabama, the assignment of a mortgage must be evidenced by a writing to comply with the Statute of Frauds. See Dean v. Clark, 270 Ala. 55, 56, 116 So.2d 379, 380 (1959). In Byrd, the ejectment plaintiff presented two writings whose conflicting dates raised a factual question as to the true date on which MorEquity had been assigned the Byrds’ mortgage.
The present case, however, concerns a foreclosing entity whose source of authority to exercise the power of sale in a mortgage was its status as the owner of the debt secured by the mortgage. The promissory note evidencing that debt was a bearer instrument that could be transferred in two ways: by delivery of possession or by written assignment. See Ala. Code 1975, § 8-5-24 (“The transfer of a ... note given for the purchase money of lands, whether the transfer be by delivery merely or in writing, expressed to be with or without recourse on the transferor, passes to the transferee the lien of the vendor of the lands.”); Kevin M. Hud-speth, Clarifying Murky MERS: Does Mortgage Electronic Registration Systems, Inc., Have Authority to Assign the *204 Mortgage Note in a Standard Illinois Foreclosure Action?, 31 N. Ill. U.L.Rev. 1, 14 (2010) (stating that “a plaintiff in a mortgage foreclosure action obtains the right to enforce the note in one of two primary ways: (1) through proper assignment ..., or (2) through negotiation under the U[niform] C[ommercial] C[ode]”).
“Ownership of a contractual obligation can generally be transferred by a document of assignment; see Restatement, Second, Contracts § 316 [(1981)]. However, if the obligation is embodied in a negotiable instrument, a transfer of the right to enforce must be made by delivery of the instrument; see [former] U.C.C. § 3-202 (1995).”
Restatement (Third) of Property: Mortgages § 5.4, cmt. b. at 381.
Because, as previously discussed, BAC established that MidFirst had obtained physical possession of the note, a bearer instrument, on September 17, 2005, the trial court correctly determined that the purported written assignment of the note on August 27, 2009 was “superfluous.” Stated differently, the fact that the date of the assignment of the note to MidFirst in 2009 differed from the date on which Mid-First had become a holder of the note in 2005 did not present a “contradiction” or a “conflict” in the evidence concerning the time at which MidFirst was entitled to enforce the note. Instead, the divergence in the dates indicated that, insofar as MERS purported to assign the note in 2009, the assignment was inoperative because MidFirst had already become the entity entitled to enforce the note when it obtained possession of the note four years earlier. “[T]he note is symbolic of the debt, and the physical possession of the note governs over any other indicium of its ownership.” Restatement (Third) of Property: Mortgages § 5.4(c), cmt. following illus. 7 (Tentative Draft No. 5, March 18, 1996).
We surmise that the purported assignment of the note that was included in the August 27, 2009, writing designated as an “Assignment of Mortgage ” was actually a precautionary measure by MERS, intended to insulate the assignment of the mortgage from the operation of the rule applied in some states that a transfer of the mortgage without a transfer of the debt is void, absent a contrary intent of the original contracting parties. See, e.g., Deutsche Bank Nat’l Trust Co. v. Pietranico, 33 Misc.3d 528, 537 n. 4, 928 N.Y.S.2d 818, 825 n. 4 (Sup.Ct.2010) (stating that the “long-standing New York rule [is] that a transfer of the mortgage without a transfer of the debt is void” “absent a contrary intent of the original contracting parties. It is interesting to note that the New York rule is contrary to the predomin[ant] common-law rule that a transfer of the mortgage also transfers the debt unless the parties otherwise agree or such transfer is precluded by the applicable provision of the Uniform Commercial Code.... ”). Alabama and the Restatement follow the “predomin[ant] common-law rule.” See Folmar v. Beall, 204 Ala. 298, 301, 85 So. 540, 542 (1920) (stating that “the security being the mere incident of the indebtedness, an assignment of the debt passes the title in the pledge to the assignee of the debt, unless the parties agree otherwise”); Restatement (Third) of Property: Mortgages § 5.4(a) (“A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.”).
Based on the foregoing, we conclude that there was no “conflicting” evidence that created a genuine issue of material fact concerning when MidFirst became entitled to enforce the note.
*205 II.
Citing In re Agard, 444 B.R. 281, 246 (Bankr.E.D.N.Y.2011), Coleman contends that because the note and mortgage were separated, MidFirst never had an enforceable lien. We question whether Agard, a decision applying New York law, stands for the proposition that a note and a mortgage cannot be separated in New York; nevertheless, Alabama law specifically contemplates that there can be a separation. See § 35-10-12 and Hartón, supra. The Restatement (Third) of Property: Mortgages takes the position that a note and mortgage can be separated but that “[t]he mortgage becomes useless in the hands of one who does not also hold the obligation because only the holder of the obligation can foreclose.” Restatement (Third) of Property: Mortgages § 5.4, Reporter’s Note—Introduction, cmt. a at 386. The Restatement explains: “ ‘The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.’ ” Id. at 387 (quoting Best Fertilizers of Arizona, Inc. v. Burns, 117 Ariz. 178, 179, 571 P.2d 675, 676 (Ct.App.), reversed on other grounds, 116 Ariz. 492, 570 P.2d 179 (1977)). As previously discussed, because MidFirst held the note at all pertinent times, it was, therefore, entitled to exercise the right to foreclose under the mortgage.
III.
Coleman contends that she was not given notice of default and notice of acceleration as required by the mortgage instrument. Assuming, without deciding, that the assertion of such alleged defects in the process leading up to foreclosure is available as a defense to an ejectment action brought by a party that was not the foreclosing entity but is a subsequent vendee of the foreclosure-sale purchaser, we note that the mortgage instrument provided, in paragraph 14, that
“[a]ny notice to borrower provided for in this security instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the property address or any other address borrower designates by notice to lender.... Any notice provided for in this security instrument shall be deemed to have been given to borrower ... when given as provided in this paragraph.”
In support of its summary-judgment motion, BAC submitted evidence indicating that MidFirst’s file concerning the Coleman loan contained a notice-of-default letter purportedly sent to Coleman on April 8, 2009, by Midland Mortgage Company, MidFirst’s operating subsidiary, as well as a notice-of-acceleration letter purportedly sent to Coleman on July 24, 2009, by an attorney retained by MidFirst. Both letters were identified by Poage and attached to her first affidavit. Although Coleman denied that she had received the letters, she did not dispute that the letters had been sent or question the source of Poage’s knowledge that the letters had been sent. Coleman, therefore, failed to establish the existence of a genuine issue of material fact regarding whether the notices were sent. See Redman v. Federal Home Mortg. Corp., 765 So.2d 630, 634 (Ala.1999).
In her appellate brief, Coleman raises a new argument—that neither the notice-of-default letter nor the notice-of-aceeleration letter “explained the relationship between Midland Mortgage and Mid-First Bank.” That argument, however, was not presented to the trial court and cannot be raised for the first time on appeal. See White Sands Group, L.L.C. v. PRS II, LLC, 998 So .2d 1042, 1057 (Ala.2008).
*206 IV.
Coleman argues that the Secretary’s special warranty deed, which was executed by MidFirst on July 28, 2009, is “void as an impossibility” because Mid-First did not have title until it purchased the property on September 1, 2009, at the foreclosure sale. That argument overlooks the equitable doctrine of after-acquired title.
“ ‘ “In no State perhaps has the rule been more rigidly adhered to than in this, ‘that when one sells land to which he has no right, with warranty of title, and he afterwards acquires a good title, it passes instantly to his vendee, and he is estopped from denying that he had no right at the time of the sale.’
Jett v. Lawyers Title Ins. Corp., 985 So.2d 434, 438 (Ala.Civ.App.2007) (quoting Turner v. Lassiter, 484 So.2d 378, 380 (Ala.1985), quoting in turn Doolittle v. Robertson, 109 Ala. 412, 413, 19 So. 851, 851 (1895)). Based on the doctrine of after-acquired title, MidFirst perfected its title when it purchased the property at the foreclosure sale and title immediately passed to the Secretary.
V.
A. Coleman next argues that a foreclosing entity is required by a provision of the National Housing Act, specifically 12 U.S.C. § 1715u(a) (effective May 20, 2009) (“the Act”), and by regulations promulgated by the Department of Housing and Urban Development (“HUD”) and the Department of Veterans Affairs (“VA”), to offer loss-mitigation alternatives to foreclosure for mortgagors who are in default. Coleman maintains that MidFirst failed to follow the loss-mitigation procedures set forth in the Act and in the pertinent regulations and that its failure rendered the foreclosure wrongful.
In support of her argument, Coleman cites a number of decisions from other jurisdictions indicating that the failure to explore loss-mitigation actions as an alternative to foreclosure is an equitable defense to a foreclosure action. The cases upon which Coleman relies do, in fact, contain such statements, but the statements are in the context of judicial-foreclosure actions by mortgagees, or in pre-foreclosure actions by mortgagors seeking declaratory or injunctive relief, not in the context of nonjudicial-foreclosure actions pursuant to a power of sale in a mortgage instrument or post-foreclosure ejectment actions. See, e.g., Federal Nat’l Mortg. Ass’n v. Moore, 609 F.Supp. 194 (N.D.Ill.1985) (judicial foreclosure); ABN AMRO Mortg. Group, Inc. v. Tullar, 770 N.W.2d 851 (Iowa Ct.App.2009) (table) (decision without a published opinion) (judicial foreclosure); Wells Fargo Home Mortg., Inc. v. Neal, 398 Md. 705, 922 A.2d 538 (2007) (pre-foreclosure action by mortgagor seeking declaratory and injunctive relief); and Federal Land Bank of St. Paul v. Overboe, 404 N.W.2d 445, 449 (N.D.1987) (judicial foreclosure). “[I]t is generally recognized under Alabama law that a power of sale given under a mortgage affords the mortgagee an additional and more speedy remedy for recovery of the debt.” Johnson v. Shirley, 539 So.2d 165, 168 (Ala.1988) (citing Paint Rock Props, v. Shewmake, 393 So.2d 982, 984 (Ala.1981)). In the absence of a statute or controlling authority from our supreme court to the contrary, we conclude that the failure of a foreclosing entity to comply with HUD or VA loss-mitigation requirements may not be raised as a defense to an ejectment action following a nonjudicial foreclosure.
B. Coleman contends that MidFirst misrepresented to her that the foreclosure would not take place as long as MidFirst was working with her in its loss-mitigation program. Coleman’s affidavit stated:
*207 “I spoke to the mortgage company numerous times about a loan-modification or work-out plan through their loss-mitigation program. They told me they would work with me but they did not follow through because they sold the loan to another mortgage company. My mortgage was transferred several times during this time frame and I could never get anyone to follow up with the modification. I sent all the requested information to them; however I never heard from them. I was told by them that the foreclosure would not go forward as long as they were working with me through the loss-mitigation program. Because of these communications with the lender, I was confused about the foreclosure procedure. Further, I relied upon these communications and believed that the mortgage company was working with me to help me keep my home. They did not follow up and failed to work with me through the loss-mitigation program.”
(Emphasis added.) BAC moved to strike the emphasized portion of Coleman’s affidavit on the grounds that it was hearsay and that it violated the Statute of Frauds. “While the trial court did not rule on [BAC’s] motion to strike [Coleman’s] affidavit, [BAC] was entitled to an order striking [Coleman’s] ... statement.” Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 57 (Ala.2003). See also Haygood v. Wesfam Rests., Inc., 675 So.2d 1312, 1314 (Ala.Civ.App.1996), overruled on other grounds, Rothenberger v. Cast Prods., Inc., 716 So.2d 1220, 1224 (Ala.Civ.App.1997) (stating that “[t]he motion to strike was not ruled upon by the trial court; however, because the deficiencies of the affidavit were brought to that court’s attention, they are properly subject to our review”).
Assuming that a MidFirst official had made the oral representation that Coleman alleged, that representation would have been unenforceable under the Statute of Frauds. Section 8 — 9—2(7), Ala. Code 1975, provides:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(7) Every agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000.”
(Emphasis added.) See DeVenney v. Hill, 918 So.2d 106 (Ala.2005) (holding that agreement whereby seller of land would forbear collecting $150,000 of purchase price for 30 days in return for additional $50,000 from buyer was void because it was not in writing). In Holman v. Childersburg Bancorporation, Inc., 852 So.2d 691 (Ala.2002), our supreme court held that when a tort claim turns on an alleged agreement that is unenforceable under the Statute of Frauds, the Statute of Frauds also bars proof of that agreement to support the tort claim. The court explained that to allow the tort claim would defeat the purpose of the Statute of Frauds. Likewise, we conclude that to allow a defective-foreclosure defense that is predicated upon an alleged agreement that is unenforceable under the Statute of Frauds would also defeat the purpose of the Statute of Frauds.
Based on the foregoing, we conclude that BAC, as the agent for the Secretary, established its right to eject Coleman from *208 the property and that, therefore, the trial court’s judgment is due to be affirmed.
APPLICATION GRANTED; OPINION OF FEBRUARY 3, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
BRYAN and THOMAS, JJ., concur.
THOMPSON, P.J, and MOORE, J., concur in the result, without writings.

. The deed was recorded in the Jefferson County Probate Office on November 9, 2009.

. The assignment was recorded in the Jefferson County Probate Office on September 9, 2009.

. Rule 59.1 provides that a postjudgment motion that is not ruled on by the court within 90 days is deemed denied at the expiration of the 90-day period. The 90th day following Coleman’s filing of her postjudgment motion on September 27, 2010, was Sunday, December 26, 2010. Therefore, Coleman's post-judgment motion was deemed denied on Monday, December 27, 2010. See First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala.Civ.App.2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala.1983).