On Application for Rehearing

THOMAS, Judge.
The opinion of January 4, 2013, is withdrawn, and the following is substituted therefor.
Steven R. Walker and Lawanda Walker appeal from a judgment of the Jefferson Circuit Court entering a summary judgment in favor of North American Savings Bank (“the Bank”) on the Bank’s ejectment action and disallowing the Walkers’ counterclaims. We affirm.

Facts and Procedural History

In February 2005, Mr. Walker applied for a loan with the Bank and was preap-proved for a loan in the amount of $175,000 at a fixed interest rate of 7.125%. However, Mr. Walker had not located a property he intended to purchase at the time he was preapproved for the loan in the amount of $175,000. In August 2005, the Walkers located a property that they intended to purchase; however, the purchase price of the property was above the $175,000 pre-approval amount. Mrs. Walker subsequently applied for and obtained a loan in the amount of $224,000 from the Bank to purchase the property. On September 13, 2005, Mrs. Walker executed a promissory note in favor of the Bank and the Walkers signed a mortgage securing the note in favor of Mortgage Electronic Registrations Systems, Inc. (“MERS”), as nominee for the Bank. The promissory note indicated that the principal amount of the loan was $224,000, and the “Truth In Lending” disclosure statement (“the TIL statement”) indicated that the loan had a variable interest rate. It was undisputed that Mrs. Walker signed both the note and the TIL statement; however, the Walkers testified that they had been assured by the Bank that the loan terms would be modified 30 days after the September 13, 2005, closing date and that they would be given a lower interest rate. The loan terms were never modified.
In November 2005, the Walkers had trouble making their required monthly payment because, as the Walkers testified via affidavit, they had incurred some unexpected expenses following the death of a family member and had had a loss of income. The Walkers defaulted on the *593 loan.[1] The mortgage was subsequently assigned to the Bank on July 20, 2008. The Walkers testified via affidavit that they were never notified of the assignment.
In support of its summary-judgment motion, the Bank submitted evidence indicating that it had notified the Walkers of its intent to foreclose on the property for their failure to timely pay the monthly installments due under the note. On September 5, 2008, an attorney retained by the Bank notified the Walkers via a mailed letter that the Bank was accelerating the maturity date of the loan and commencing foreclosure proceedings, with a foreclosure sale scheduled for September 80, 2008. The letter indicated that it had enclosed a copy of the foreclosure notice to be published in the Alabama Messenger. The notices of the foreclosure sale were published on September 6, 2008, September 13, 2008, and September 20, 2008, in the Alabama Messenger. At the foreclosure sale on September 30, 2008, the Bank, the highest bidder at the foreclosure sale, purchased the property for $205,000. On October 1, 2008, the Bank’s attorney sent the Walkers a demand for possession of the property.
On October 20, 2008, the Bank filed a complaint alleging that it was the owner of the property by virtue of a foreclosure deed and seeking to eject the Walkers from the property. On November 20, 2008, the Walkers answered the complaint, denying the allegations in the complaint and asserting the affirmative defenses of “defective notice, defective sale, and wrongful foreclosure.”
The parties conducted discovery. On July 7, 2009, the trial court entered a scheduling order that set the trial date and stated, in pertinent part: “Any amendments to the pleadings must be FILED no later than December 1, 2009. Other amendments to pleadings require leave of Court.” (Capitalization in original.)
On October 28, 2009, the Bank filed a motion for a summary judgment. In support of that motion, the Bank submitted Mr. Walker’s February 2005 loan application, Mrs. Walker’s August 2005 loan application, the TIL statement signed by Mrs. Walker, the mortgage, the assignment of the mortgage, the September 5, 2008, notice-of-acceleration and notice-of-foreclosure letter, the foreclosure deed, the October 1, 2008, demand letter, and the affidavit of Taunya Kellam, an assistant vice president and collections and REO manager for the Bank. Kellam stated that she had reviewed the Bank’s records concerning the Walkers’ loan and that she had personal knowledge of the facts set forth in her affidavit. She authenticated several important documents, including the Walkers’ loan applications, the mortgage, the TIL statement, the foreclosure deed, and the notice-of-acceleration and demand-for-possession letters that the Bank’s attorney had sent to the Walkers.
On November 19, 2009, the Walkers filed a response in opposition to the motion for a summary judgment, arguing that the Bank lacked a possessory interest in the property because it had wrongfully foreclosed. The Walkers further alleged that the foreclosure was wrongful because, they said, the Bank had breached the notice requirements of the mortgage, the Bank had failed to comply with loss-mitigation procedures, the Bank had breached its fiduciary duty because the purchase price it paid at foreclosure was far below market value, and Kellam’s affidavit was not based on personal knowledge as required by Rule 56(e), Ala. R. Civ. P., and, therefore, the Walkers asserted, there were genuine *594 issues of material fact regarding the propriety of the foreclosure sale. The Walkers’ opposition to the motion for a summary judgment also had Mr. Walker’s and Mrs. Walker’s affidavits attached to it.
The trial court had set a hearing on the Bank’s motion for a summary judgment for November 20, 2009. On November 20, 2009, in light of the Walkers’ November 19, 2009, response in opposition to the motion for a summary judgment, the trial court entered an order resetting the hearing on the summary-judgment motion for December 14, 2009. Additionally, the trial court’s November 20, 2009, order expressly allowed the Walkers until November 30, 2009, to file any supplements to their response and expressly allowed the Bank until December 11, 2009, to reply to the Walkers’ response. On November 30, 2009, the Walkers filed an amended response in opposition to the motion for a summary judgment. The amended response asserted the same arguments as to the same issues as the original response, but it contained several additional exhibits, including supplemental affidavits of Mr. Walker and Mrs. Walker.
On December 1, 2009, the last day allowed for amended pleadings without leave of court pursuant to the July 7, 2009, scheduling order, the Walkers filed a pleading styled as an “Amended Answer and Counterclaim” (“the amended answer”). The amended answer asserted several additional affirmative defenses and also contained numerous counterclaims. The counterclaims included the following: breach of contract, breach of fiduciary duty, wrongful foreclosure, violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (“TILA”), violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. (“RESPA”), fraud and intentional misrepresentation, unfair and deceptive trade practices,[2] unconseion-ability, breach of covenant of good faith and fair dealing, unjust enrichment, and, in addition, a claim seeking declaratory relief.
On December 10, 2009, the Bank filed a reply to the Walkers’ amended response to the Bank’s motion for a summary judgment. That reply again asserted that the trial court should enter a summary judgment in favor of the Bank because, the Bank asserted, it had proven a prima facie case that there was no genuine issue of material fact regarding the underlying ejectment action and the Walkers had failed to present substantial evidence of a genuine issue of material fact. The reply also addressed the Walkers’ numerous counterclaims. On December 10, 2009, the Bank also filed a motion to strike portions of the Walkers’ affidavits and certain unauthenticated tax documents regarding the property. On December 10, 2009, the Bank also filed a motion to strike or to dismiss the Walkers’ counterclaims.
On December 11, 2009, the Bank filed an additional evidentiary submission in support of its motion for a summary judgment — the affidavit of Stephanie Wright, an assistant vice president and collection and REO manager for the Bank. Wright stated that she had reviewed the Bank’s records concerning the Walkers’ loan and that she had personal knowledge of the facts set forth in her affidavit. She authenticated numerous letters sent to the Walkers notifying them that they were in default.[3]
*595 On February 5, 2010, the trial court conducted a hearing regarding the Bank’s motion to strike or to dismiss the Walkers’ counterclaims. On May 9, 2011, the trial court entered a summary judgment in favor of the Bank on the Bank’s ejectment action and disallowed all the Walkers’ counterclaims. On June 7, 2011, the Walkers filed a motion to alter, amend, or vacate the May 9, 2011, judgment. The Bank filed a response in opposition to the Walkers’ postjudgment motion on July 18, 2011. The trial court entered an order denying the Walkers’ postjudgment motion on September 6, 2011.[4] On October 13, 2011, the Walkers filed a timely notice of appeal. The supreme court transferred the Walkers’ appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).

Summary-Judgment Discussion

On appeal, the Walkers assert numerous arguments directed toward the propriety of the summary judgment. We review a trial court’s summary judgment under a de novo standard of review. Specifically,
“[a] summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present ‘substantial evidence’ creating a genuine issue of material fact — ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). We will address the Walkers’ arguments directed toward the summary judgment in turn.

I.

The Walkers argue that the Bank did not have the right to exercise the power of sale under the mortgage because the Bank failed to comply with the notice requirements contained in the mortgage instrument. Specifically, the Walkers contend that they never received a notice-of-default letter, a notice-of-acceleration letter, a notice-of-foreclosure-sale letter, and a notice-of-assignment letter. In support of its summary-judgment motion, the Bank submitted evidence indicating that the Bank’s file concerning the Walkers’ loan contained numerous notice-of-default and intent-to-accelerate letters, one of which was a certified letter evidencing Mrs. Walker’s signature (see note 3, supra), as well as a notice-of-acceleration letter, with a notice-of-foreclosure-sale letter enclosed, purportedly sent to the Walkers on September 5, 2008, by an attorney retained by the Bank. However, we will address each alleged notice deficiency in turn.
*596 First, the Walkers contend that they never received a notice-of-assignment letter. Specifically, the Walkers’ affidavits state that they were never notified of the assignment of the mortgage as, they assert, was required by the mortgage instrument. However, as the Bank highlights, paragraph 20 of the mortgage instrument clearly states: “The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.” The evidentiary materials indicate that the mortgage was assigned to the Bank. Specifically, all the notice-of-default letters indicate that the Bank held the mortgage, and the foreclosure-sale notice explicitly notes the assignment. Thus, the alleged failure of the Bank to send the Walkers a notice prior to the assignment is of no consequence because such notice was not required by the mortgage instrument and the evidentiary materials indicate that the Walkers were, in fact, notified of the assignment.
Next, the Walkers contend that they never received a notice-of-default letter. In regard to the notice-of-default letter, the Walkers’ affidavits state that they “w[ere] never sent nor did [they] receive any notice of default or an opportunity to cure the delinquency.” However, as noted above, the Bank submitted a notice-of-default letter, with a certified-mail receipt evidencing Mrs. Walker’s signature, indicating that a notice was indeed mailed and that Mrs. Walker received the notice. See note 3, supra. Therefore, the evidence before the trial court indicated that the Walkers had received a notice-of-default letter.
Furthermore, in regard to the notice-of-acceleration and notice-of-foreclosure-sale letter, the Walkers failed to assert that the Bank had failed to send the September 5, 2008, notice-of-acceleration and notice-of-foreclosure-sale letter; instead, the Walkers merely assert that they did not receive the letter. Specifically, Mr. Walker’s affidavit states:
“The [Bank] wrongfully foreclosed and attempted to purchase for itself the property on [sic], without giving me a proper notice of the default and opportunity to cure that default. Prior to acceleration of the debt, I did not receive the required notice outlined in the mortgage document that I was given on September 13, 2005.”
Moreover, the Walkers contend that, even had they received the notice letters, the notice letters were improper because, they say, the letters did not comply with the provisions in paragraph 22 of the mortgage instrument. Paragraph 22 of the mortgage instrument provides, in pertinent part:
“The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.”
However, the record indicates that the numerous notice-of-default letters that the Bank attached in support of its summary-judgment motion clearly state that the Walkers were in default, the amount due to cure the default, that the Walkers had 30 days from the date of the letter to cure the default, that the Bank intended to accelerate the debt owed should the Walk *597 ers fail to remit the necessary payments, and that the Walkers had “the right to bring a court action to assert the nonexistence of this default.” The Walkers, therefore, failed to establish that there was a genuine issue of material fact regarding whether the notices were sent as required by the mortgage instrument or whether the notices failed to provide the information required by paragraph 22 of the mortgage instrument. See Coleman v. BAC Servicing, 104 So.3d 195, 205 (Ala.Civ.App. 2012) (rejecting an argument that Coleman was not given notice of default or notice of acceleration as required by the mortgage document when BAC submitted evidence indicating that notice letters were contained in Coleman’s file and that Coleman had failed to allege that BAC had failed to send the letters).

II.

The Walkers next argue that the Bank’s evidence regarding the various notices failed to comply with Rule 56, Ala. R. Civ. P. Specifically, they contend that Kellam’s affidavit could not be based on personal knowledge and fails to comply with Rule 56(e). Additionally, the Walkers argue that Wright’s affidavit was untimely because, they say, it was filed after the Bank had submitted its summary-judgment motion and, thus, was filed too late to be considered by the trial court. We disagree with both contentions.
Rule 56(e) states:
“(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party’s pleading, but the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him.”
The Walkers argue that Kellam’s affidavit failed to show that it was based on personal knowledge because, they say, she could not have known whether the notice letters were actually sent by the Bank’s retained counsel. Kellam stated that she had personal knowledge regarding the notices, and she further testified that in her official capacity she had occasion to review the notice letters. Specifically, Kellam’s affidavit contained the following statements:
“My name is Taunya Kellam. I am employed by [the Bank] as Assistant Vice President and Collections and REO Manager and in such capacity am an authorized agent of [the Bank], and have the authority to make this Affidavit on its behalf. I have personal knowledge of the facts set forth herein, and if called as a witness, could competently testify thereto.
[[Image here]]
“2. In my capacity as Assistant Vice President and Collections and REO Manager for [the Bank], I have had occasion to personally review the books, ledgers and papers of the mortgage loan relating to [the Walkers] herein. From my knowledge as Assistant Vice Presi *598 dent and Collections and REO Manager for [the Bank], I can competently testify that the books[,] ledgers and papers of [the Bank] are regularly maintained as a business record of [the Bank], and as such, are utilized and relied upon herein.”
Thus, the affidavit meets the requirements of Rule 56(e).
Moreover, in Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 777 (Ala.2012) (footnote omitted), our supreme court clarified that “a party must move the trial court to strike any evidence that violates Rule 56(e), Ala. R. Civ. P. An objection to the inadmissible evidence alone is not sufficient.” In this case, although the Walkers objected to Kellam’s affidavit in their response in opposition to the summary-judgment motion, they failed to file a motion to strike the affidavit. Thus, the Walkers failed to preserve for appellate review the alleged deficiencies in Kellam’s affidavit. See Perry v. Federal Nat’l Mortg. Ass’n, 100 So.3d 1090, 1096 (Ala. Civ.App.2012).
Finally, the Walkers argue that Wright’s affidavit was also due to be stricken because, they contend, it was untimely filed. Initially, we again note that the Walkers failed to file a motion to strike the affidavit. Moreover, the trial court’s November 20, 2009, order expressly allowed the Bank until December 11, 2009, to reply to the Walkers’ response in opposition to the summary-judgment motion. Wright’s affidavit was filed on December 11, 2009, and, thus, was timely filed under the trial court’s order.

III.

In their appellate brief, the Walkers argue that the foreclosure was wrongful because, they contend, a foreclosing entity is required to offer loss-mitigation alternatives to foreclosure for mortgagors who are in default before initiating foreclosure proceedings pursuant to the National Housing Act, specifically 12 U.S.C. § 1701-x(c)(5) (effective July 30, 2008), and pursuant to regulations promulgated by the Department of Housing and Urban Development. The Walkers contend that they were never offered counseling services or any other loss-mitigation services before the foreclosure sale. Although the record does not contain evidence indicating that the Walkers were provided counseling or other loss-mitigation services before foreclosure, this court has determined that any alleged failure to comply with loss-mitigation procedures does not constitute a valid defense to an ejectment action following a nonjudicial foreclosure. See Coleman, 104 So.3d at 206 (holding that, “[i]n the absence of a statute or controlling authority from our supreme court to the contrary, we conclude that the failure of a foreclosing entity to comply with [Department of Housing and Urban Development] or [Department of Veterans Affairs] loss-mitigation requirements may not be raised as a defense to an ejectment action following a nonjudicial foreclosure”). Thus, the alleged failure to exhaust all loss-mitigation procedures before the foreclosure sale is not a valid defense requiring reversal in the present ejectment action.

IV.

Next, the Walkers contend that the foreclosure sale was defective because, they say, the Bank breached its fiduciary duty by intentionally underbidding the value of the property and creating a deficiency in price. The only evidence Mr. Walker presented to the trial court regarding the fair market value of the property was his affidavit testimony based on the tax assessor’s records and copies of the tax assessor’s records. Specifically, the tax assessor’s records indicated that the property *599 was valued at $224,000 and Mr. Walker’s affidavit stated:
“The [Bank] bought the property from itself at the foreclosure sale for $205,000.00 which was well below the market value. The most recent real estate evaluation from the Tax Collector listed market value for the property at $224,000.00.”
The Bank filed a motion to strike portions of the Walkers’ affidavits and the tax records. The trial court did not expressly rule on the Bank’s motion to strike. However, this court has stated that
“ ‘ “[generally the tax assessing authority’s evaluation is not relevant when offered to prove market value. The rationale underlying this general exclusionary rule is that ‘it is notorious that properties are not assessed at anything like true value or market value.’ ” ’ Presley v. B.Í.C. Constr., Inc., [64] So.3d [610, 621] (Ala.Civ.App.2009) (quoting 2 Charles W. Gamble, McElroy’s Alabama Evidence § 267.04 (5th ed.1996)).”
Berry v. Deutsche Bank Nat’l Trust Co., 57 So.3d 142, 148 (Ala.Civ.App.2010). Thus, the trial court could have reasonably concluded that the $224,000 price was not a reliable value by which to prove the fan-market value of the property.
Moreover, even assuming that the fair market value was indeed $224,000, the bid price of $205,000 amounted to just over 91.5% of the alleged fair market value. “ ‘ “The general rule is that, ‘where the price realized at the [foreclosure] sale is so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.’ ” ’ ” Mt. Carmel Estates, Inc. v. Regions Bank, 853 So.2d 160, 168 (Ala.2002) (quoting Breen v. Baldwin Cnty. Fed. Sav. Bank, 567 So.2d 1329,1333 (Ala.1990), quoting in turn Hayden v. Smith, 216 Ala. 428, 430-31, 113 So. 293, 295 (1927)). In Perry, this court held that a bid price of 84% of the alleged fair market value was not so low as to shock the conscience. 100 So.3d at 1102. Moreover, in Mt. Carmel Estates, our supreme court held that a bid price of 81% of the fair market value did not shock the conscience. 853 So.2d at 168. Therefore, we conclude that the price realized at the foreclosure sale was not so low as to shock the conscience under the facts of this case.
Thus, we affirm the summary judgment in favor of the Bank.

Counterclaims Discussion

On appeal, the Walkers also argue that the trial court erred in disallowing their 13 counterclaims. As noted previously, the counterclaims included the following: breach of contract, breach of fiduciary duty, wrongful foreclosure, violations of TILA, violations of RESPA, fraud and intentional misrepresentation, unfair and deceptive trade practices, unconscion-ability, breach of covenant of good faith and fair dealing, unjust enrichment, and, in addition, a claim seeking declaratory relief. In the Bank’s motion to strike or dismiss the counterclaims, it argued, among numerous other arguments, that the counterclaims were untimely filed under Rule 13, Ala. R. Civ. P. Because we find the Bank’s argument regarding Rule 13 to be dispositive, we pretermit discussion of the parties’ other arguments regarding the counterclaims. See Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court would pretermit discussion of further issues in light of dispositive nature of another issue). Therefore, on appeal, we review whether the trial court erred in disallowing the counterclaims under the *600 facts of the present case.[5]
“Allowing or not allowing a counterclaim rests within the sound discretion of the trial court, and its decision on that question will not be reversed absent a showing that it abused its discretion. Brad’s Industries, Inc. v. Coast Bank, 468 So.2d 129,130 (Ala.1985).”
Wells v. Geneva Cnty. Bd. of Educ., 646 So.2d 98, 99 (Ala.Civ.App.1994).
On appeal, the Walkers contend that the trial court erred in disallowing the counterclaims because, they argue, the Bank failed to present any evidence indicating that it would have been prejudiced by allowing the counterclaims and becausS the scheduling order allowed the Walkers until December 1, 2009, the date they filed the counterclaims, to amend their pleadings. We cannot agree that the Bank failed to allege that it would have been prejudiced by allowing the counterclaims or that the fact that the counterclaims were filed within the time allowed in the scheduling order mandates a conclusion by this court that the trial court exceeded its discretion in disallowing the counterclaims under the facts of this case.
Pursuant to Rule 16(b)(1), Ala. R. Civ. P., a trial court “may enter a scheduling order that limits the time ... to amend the pleadings.” In this case, the trial court entered a scheduling order that set the trial date and stated, in pertinent part: “Any amendments to the pleadings must be FILED no later than December 1, 2009. Other amendments to pleadings require leave of Court.” (Capitalization in original.) The Walkers filed them counterclaims on December 1, 2009; thus, the counterclaims were timely under the scheduling order. The Walkers argue that “it is clearly an abuse of discretion [f]or the [trial] court to disallow an amended counterclaim where the trial court has specifically placed a time for filing the amendments in its scheduling order.” We disagree.
In Blackmon v. Nexity Financial Corp., 953 So.2d 1180 (Ala.2006), our supreme court affirmed a trial court’s disallowance of Blackmon’s amended complaint, which had been amended within the time provided by the scheduling order, under Rule 15, Ala. R. Civ. P. Specifically, our supreme court stated as follows:
“We decline to hold, as Blackmon urges, that a scheduling order establishes the date up until which a party may automatically amend a pleading, regardless of prejudice to the other party or undue delay. We hold instead that, although the trial court should freely allow the amendment of pleadings within the time set in the scheduling order, the trial court has discretion, in the interests *601 of justice, to deny an amendment for reasons of prejudice or undue delay.”
Id. at 1190. Thus, we cannot accept the Walkers’ argument that the trial court exceeded its discretion in disallowing the counterclaims solely because they filed their counterclaims by the date contained in the scheduling order. However, we must further consider whether the trial court could have reasonably concluded that the Bank would be prejudiced by allowing the Walkers to proceed on their counterclaims under the facts of this case.
In its motion to dismiss or strike the Walkers’ counterclaims, the Bank argued that it would be prejudiced because, it said, the Walkers were aware of the breach-of-contract, breach-of-fiduciary-duty, wrongful-foreclosure, and declaratory-relief claims since the time of the foreclosure sale on September 30, 2008, and that they had known of the facts underlying the remaining counterclaims since the loan-closing transaction that had occurred on September 13, 2005. Thus, it asserted that the Walkers should have asserted the counterclaims in their answer pursuant to Rule 13. Moreover, the Bank stated that it would be prejudiced by allowing the Walkers to assert the counterclaims in December 2009 when the trial was scheduled for February 16, 2010, and that allowing the counterclaims “would only serve to further delay [the Bankj’s right to possession” because the Bank would have to request a continuance to perform “the extensive discovery necessary for defending against the ... counterclaims.” Therefore, in contradiction to the Walkers’ argument on appeal — that the Bank failed to allege or demonstrate that it would have been prejudiced by allowing the counterclaims — the record indicates that the Bank asserted several reasons explaining how it would have been prejudiced by allowing the Walkers to assert and proceed on their counterclaims at such a late stage in the litigation process.
In Blackmon, our supreme court noted that under Rule 15, Ala. R. Civ. P., a “trial court can refuse to allow an amendment if allowing it would result in actual prejudice to the opposing party or for reasons of ‘undue delay.’” 953 So.2d at 1189. Furthermore, our supreme court explained the meaning of the term “undue delay.” Specifically, it stated:
“Undue delay can have two different meanings in a case. First, the trial court has discretion to deny an amendment to a pleading if allowing the amendment would unduly delay the trial. Horton v. Shelby Med. Ctr., 562 So.2d 127, 130 (Ala.1989). Second, an unexplained undue delay in filing an amendment when the party has had sufficient opportunity to discover the facts necessary to file the amendment earlier is also sufficient grounds upon which to deny the amendment. Stallings [v. Angelica Uniform Co.], 388 So.2d [942,] 947 [ (Ala.1980) ]; see also Rector v. Better Houses, Inc., 820 So.2d 75, 78 (Ala. 2001) (holding that the trial court properly struck the amended complaint when the plaintiff offered no reason to refute the trial court’s finding that the new allegations in the amended complaint were based on facts the plaintiff had known since the beginning of the action); Burkett [v. American Gen. Fin., Inc.], 607 So.2d [138,] 141 [ (Ala.1992) ] (holding that the trial court did not exceed its discretion in striking the amended complaint where the plaintiffs had learned of the facts underlying the new allegations six months before they attempted to amend).”

Id.

Although Blackmon involved an amend *602 ed pleading under Rule 15,[6] the analysis is instructive to the analysis applied to the counterclaims in the case at hand under Rule 13 because both Rule 13 and Rule 15 permit the trial court discretion to allow a counterclaim or to allow an amended pleading, respectively. Rule 13 states, in pertinent part:
“(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. ...
“(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party’s claim.
[[Image here]]
“(f) Omitted Counterclaim. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.”
The trial court could have reasonably concluded that allowing the counterclaims would cause undue delay because, as the Bank asserted, allowing the counterclaims would require additional discovery and would delay the trial setting. Moreover, the Walkers did not file any objection to the Bank’s motion to dismiss and the record does not contain any evidence indicating that additional discovery would not have been required to defend the counterclaims or that allowing the counterclaims would not have delayed the trial. Additionally, it was undisputed that the Walkers had been aware of the facts supporting all the counterclaims at the time it answered the Bank’s complaint.
Furthermore, the Walkers contend that all the counterclaims are compulsory counterclaims pursuant to Clark v. Wells Fargo Bank, N.A., 24 So.3d 424, 428 (Ala.2009). Assuming without deciding that the counterclaims are compulsory, we conclude that the Walkers erred in failing to assert the counterclaims in their answer. See Rule 13, Committee Comments on 1973 Adoption (“Rule 13(a) deals with compulsory counterclaims and requires their assertion in mandatory terms through the language ‘(a) pleading shall state, etc.’ ”). Moreover, even if the specific counterclaims had been permissive because the underlying action was an ejectment action as opposed to the foreclosure action, the trial court could still exercise its discretion to allow or disallow the counterclaims in the present action. See Weinberg v. Weinberg, 460 So.2d 1350, 1351 (Ala.Civ.App.1984) (noting that a permissive counterclaim, pursuant to Rule 13(b), may be denied at the trial court’s discretion (citing T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338 (5th Cir.1980))). We cannot conclude that the trial court exceeded its discretion in disallowing the counterclaims in this case; thus, we affirm the trial court’s *603 judgment insofar as it disallowed the Walkers’ counterclaims.

Conclusion

Based on the foregoing, the Bank established its right to eject the Walkers from the property, and the trial court properly disallowed the Walkers’ counterclaims. Therefore, the trial court’s judgment is due to be affirmed.
APPLICATION GRANTED; OPINION OF JANUARY 4, 2018, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and MOORE and DONALDSON, JJ., concur.
PITTMAN, J., concurs in the result, without writing.

. The record indicates that the Walkers failed to make a single payment on the note.

. The amended answer contained three identical counterclaims alleging unfair and deceptive trade practices.

. One of the notice-of-default letters contained a certified-mail receipt evidencing Mrs. Walker's signature. See discussion, infra.

. Although, pursuant to Rule 59.1, Ala. R. Civ. P„ the Walkers’ postjudgment motion would have been denied by operation of law on September 5, 2011, the 90th day following the filing of their postjudgment motion, September 5, 2011, was Labor Day, and, thus, the trial court's September 6, 2011, order was timely. See Rule 6, Ala. R. Civ. P.; see also First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala.Civ.App.2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala. 1983).

. We note that, in its judgment, the trial court disallowed the breach-of-contract, breach-of-fiduciary-duty, wrongful-foreclosure, and declaratory-relief claims on the basis that they were untimely under Rule 13, while it disallowed the violations-of-TILA, violations-of-RESPA, fraud and intentional-misrepresentation, unfair-and-deceptive-trade-practices, un-conscionability, breach-of-covenant-of-good-faith-and-fair-dealing, and unjust-enrichment claims on the ground that those counterclaims were barred by the applicable statute of limitations. It is well established that an appellate court "may affirm a trial court’s judgment on ‘any valid legal ground’ ” supported by the record on appeal. General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala.2003) (quoting Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala.2003)). Furthermore, " ‘[a]n appellate court ... may consider any other legal ground or valid reason for the judgment and affirm the judgment where it is correct on any legal ground, even though the ground or reason stated by the lower court is erroneous.' ” Spencer v. Malone Freight Lines, Inc., 292 Ala. 582, 589, 298 So.2d 20, 25 (1974) (quoting 5 C.J.S. Appeal and Error § 1464(4)).

. Rule 15(a) states, in pertinent part:
“Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.”