DONALDSON, Judge.
Trenton Turner, Jr., and Donna Turner appeal from a summary judgment entered by the Jefferson Circuit Court ("the trial court") in favor of Wells Fargo Bank, N.A., as Trustee for Carrington Mortgage Loan and Trust 2006-NC2 Asset-backed Pass-through Certificates ("Wells Fargo"), ejecting them from real property located in Jefferson County ("the property"). We affirm the judgment.
Facts and Procedural History
In 2006, the Turners financed the purchase of the property by executing a promissory note ("the note") in favor of New Century Mortgage Corporation ("New Century"). Contemporaneously with the execution of the note, the Turners executed a mortgage in favor of New Century on the property as security for repayment of the note. The mortgage was recorded in the Jefferson Probate Court ("the probate court").
The mortgage contained the following provisions that are pertinent to this appeal:
"1. ... [I]f any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashiers check ...; or (d) Electronic Funds Transfer.
"....
"22. Acceleration Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. ... The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured *197 by this Security Instrument and sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."
According to affidavit testimony, on July 1, 2007, New Century transferred and assigned the note and the mortgage to Wells Fargo. Carrington Mortgage Services, LLC ("Carrington"), served as the loan servicer for Wells Fargo. Section 20 of the mortgage defines the term "loan servicer" as the "entity that collects periodic payments due under the note and this security instrument and performs other mortgage loan servicing obligations under the note, this security instrument, and applicable law." The assignment of the note and the mortgage was ultimately executed on February 1, 2012, and recorded in the probate court on February 15, 2012.
Between August 1, 2011, and October 5, 2011, the Turners tendered three checks to Carrington toward payment obligations under the note that were not honored due to insufficient funds. Although the Turners ultimately satisfied the note payments for those months, Carrington assessed a $30 insufficient-check charge for each dishonored check the Turners tendered ($90 total) and two charges of $100 each for late payments. On October 22, 2011, the Turners mailed a check, post-dated to October 27, 2011, to Carrington in the amount of $2,227.68, which was sufficient to pay one principal and interest payment plus one late charge of $100. Because the October 27, 2011, check did not include payment of the $90 charges for the insufficient checks that the Turners had previously tendered or the additional $100 late fee, Carrington returned that check to the Turners. On November 28, 2011, the Turners mailed to Carrington a check sufficient to pay one principal and interest payment plus a single $100 late charge, but the Turners did not include in that check the two monthly payments for October 2011 and November 2011, the two $100 late charges, and the $90 charges for insufficient checks. Carrington purportedly returned the November 28, 2011, check to the Turners, again because it was not sufficient to bring the note current. The Turners also sent monthly payments to Carrington on December 28, 2011, January 28, 2012, April 27, 2012, May 30, 2012, June 27, 2012, July 27, 2012, and August 30, 2012, each in the amount of $2,227.68. Carrington returned each of those checks to the Turners.
On November 30, 2011, Carrington sent a letter to the Turners notifying them of its intent to foreclose on the property, stating that the loan was in default because the monthly payment due on October 1, 2011, had not been received and informing the Turners that the default could be cured by the Turners' tendering certified funds in the amount of $4,545.36. The letter further stated that
"[f]ailure to cure the delinquency within 30 days of the date of this letter may result in acceleration of the sums secured by the Deed of Trust or Mortgage and in the sale of the property.
"You have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure."
*198 No evidence was presented showing that the Turners responded to the letter.
On January 31, 2012, Trustee Management Company ("TMC"), on behalf of Wells Fargo, sent the Turners a notice of foreclosure sale stating that Wells Fargo had elected to accelerate the debt and notifying the Turners that the foreclosure sale was scheduled for February 27, 2012. The notice of the foreclosure sale was published in the Alabama Messenger newspaper on February 4, 2012, February 11, 2012, and February 18, 2012.
The foreclosure sale was conducted on February 27, 2012, and Wells Fargo was the highest bidder. On the same day, a foreclosure deed was executed conveying title to the property to Wells Fargo, and a corrected foreclosure deed correcting a typographical error was executed the same day. The foreclosure deed was recorded in the probate court on October 16, 2012. The Turners did not vacate the property after the foreclosure sale.
On November 14, 2012, Wells Fargo filed a complaint for ejectment against the Turners in the trial court. The Turners filed an answer on November 27, 2012, denying the ejectment claim and asserting certain defenses, including wrongful and unlawful foreclosure and that the notice of the foreclosure sale was defective.
On August 16, 2013, Wells Fargo filed a motion for a summary judgment, arguing that it had properly conducted the foreclosure sale, that it held lawful title to the property, and that it was entitled to possession of the property. Wells Fargo attached to its motion an affidavit of Tom Croft, senior vice president of Carrington. Croft attached as exhibits to his affidavit the note, the mortgage, the assignment of note and the mortgage, the Turners' payment history, the notice of foreclosure, evidence of publication of the notice of foreclosure sale, and the corrected foreclosure deed.
On September 4, 2013, the Turners filed a response to Wells Fargo's summary-judgment motion, arguing that Wells Fargo had caused them to default on the mortgage and that Wells Fargo had failed to provide them with proper notice as required by Section 22 of the mortgage. The Turners attached to their response Trenton Turner's affidavit; copies of the personal checks that the Turners had sent to Carrington dated October 27, 2011, November 28, 2011, December 28, 2011, January 28, 2012, April 27, 2012, May 30, 2012, June 27, 2012, July 27, 2012, and August 30, 2012, and that Carrington had returned to the Turners; and correspondence from Carrington returning some of those checks. The Turners asserted that they had submitted their mortgage payment, along with payment of a $100 late fee in October and November 2011. The Turners also asserted that Wells Fargo and Carrington had caused their nonperformance with the terms of the note because their attempted payments were not accepted. The Turners argued that had their payments been accepted, there would have been no default and no foreclosure. They also asserted that Wells Fargo had failed to provide them with proper notice under Section 22 of the mortgage of their "right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Trenton Turner testified in his affidavit that he and his wife had made the required monthly payments and that they were not delinquent on their required payments.
The trial court held a hearing on the summary-judgment motion on September 6, 2013. The parties have not provided this court with a transcript of that hearing. According to a September 13, 2013, filing by Wells Fargo, the trial court directed *199 the parties at the summary-judgment hearing to provide additional briefing on whether "substantial compliance with the terms of the notice of default and acceleration requirements of a mortgage is all that is required before a creditor may accelerate and foreclose." According to the same filing of Wells Fargo, the trial court also directed the Turners to submit additional evidence concerning their contention that they had delivered the check dated November 28, 2011, to Carrington.
On September 13, 2013, the Turners filed a supplement to their response to Wells Fargo's summary-judgment motion. In the supplement, the Turners argued that there existed a genuine issue of material fact regarding whether Wells Fargo was a holder of the note and, thus, whether Wells Fargo had the authority to foreclose on the property. The Turners did not present any additional arguments or evidence concerning delivery to Carrington of the check dated November 28, 2011. Wells Fargo filed a reply to the Turners' supplemental response on September 13, 2013. Wells Fargo did not move to strike the additional arguments raised by the Turners in their supplemental response.
The trial court entered an order on September 18, 2013, allowing the parties time to submit further briefing in light of the Alabama Supreme Court's decisions issued on September 13, 2013, in Ex parte GMAC Mortgage, LLC, 176 So. 3d 845 (Ala. 2013) and Ex parte BAC Home Loans Servicing, LP, 159 So. 3d 31 (Ala. 2013).
On January 20, 2015, Wells Fargo filed a "renewed" motion for a summary judgment. As a part of its renewed motion, Wells Fargo refiled its original motion for a summary judgment and its brief in support thereof, as well as copies of its replies to the Turners' responses to the motion. The certificate of service shows that Wells Fargo served counsel for the Turners with a copy of the renewed filings on January 20, 2015. On March 18, 2015, the trial court entered a summary judgment in favor of Wells Fargo, thereby granting Wells Fargo possession of the property.
The Turners filed a motion to alter, amend, or vacate the judgment on March 24, 2015. On the same day, Wells Fargo filed a response to the motion. The trial court held a hearing on the motion on May 27, 2015. The trial court entered an order denying the motion on June 22, 2015, summarizing the arguments asserted in the postjudgment motion and stating, in pertinent part:
"First, [the Turners] argue Wells Fargo failed to provide evidence it required certified funds from [the Turners] prior to notice of acceleration of all sums due. Second, [the Turners] claim [Wells Fargo] made additional arguments in its renewed motion for summary judgment, which was ruled upon without the benefit of a hearing.
"As to the first issue, [Section 1] of the subject mortgage states in part, 'However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid....[,]' Wells Fargo may require further payments be made via certified funds. The record shows on November 30, 2011, [Wells Fargo] mailed a copy of a 'Notice of Intent to Foreclose' to the Turners clearly stating payment was due in the form of certified funds, and allowing 30 days for [the Turners] to cure the default on their loan. Further, the Turners were aware their mortgage payments made in the form of personal checks for October and November of 2011 were not accepted, further putting them on notice their attempted form of payment was improper for those unpaid months. The Court therefore finds this *200 notice was sufficient and in accordance with the mortgage.
"Secondly, in their [postjudgment] motion, [the Turners] argue Wells Fargo's renewed motion for summary judgment filed January 20, 2015, asserts new facts not raised and argued in its original motion for summary judgment filed August 16, 2013. However, the Turners fail to specify what new facts have been asserted by [Wells Fargo]. The Court has reviewed these motions and determines Wells Fargo's renewed motion for summary judgment is nearly identical to its original motion for summary judgment, except for the new attorney information on the last page of the filing. As no new material facts are asserted by Wells Fargo, the motion fails as to this argument."
The Turners filed a notice of appeal to our supreme court on July 24, 2015. On January 11, 2016, the supreme court entered an order transferring the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Standard of Review
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989) ; Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."
Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004).
Discussion
The sole action before the trial court was the action commenced by the filing of Wells Fargo's complaint, which stated a cause of action against the Turners for ejectment pursuant to § 6-6-280, Ala. Code 1975. That statute provides, in pertinent part, as follows:
"An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same."
§ 6-6-280(b). Therefore, on a motion for a summary judgment, Wells Fargo was required to present substantial evidence establishing that it had legal title to the property and that the Turners unlawfully remained on the property.
On appeal, the Turners contend that Wells Fargo was not entitled to foreclose *201 on the property because (1) Carrington, the loan servicer for Wells Fargo, improperly refused to accept the October 27, 2011, and November 28, 2011, checks the Turners had tendered, thus causing the Turners to be in default of the mortgage; (2) Wells Fargo failed to provide proper notice to the Turners of the default pursuant to Section 22 of the mortgage; and (3) Wells Fargo failed to present substantial evidence showing that it was a holder of the note. Furthermore, we must determine whether the trial court should have provided the Turners with an opportunity to be heard or to respond to Wells Fargo's renewed motion for a summary judgment before it entered the summary judgment in favor of Wells Fargo.
I. The Turners' Brief
The Turners raise several arguments on appeal that do not appear to have been presented to the trial court. In their appellate brief, the Turners make the following arguments and factual assertions, among others: that they testified in their affidavits[1] that they were never provided notice of the assignment of the mortgage; that they were never provided proper notice pursuant to an adjustable rate rider to the mortgage regarding changes in their interest rates and payments, which changes, they say, contributed to their default; that Wells Fargo failed to send them a notice of default, a notice of intent to accelerate, and a notice of foreclosure sale; that the Turners never received the January 31, 2012, letter sent by TMC to notify the Turners of the acceleration and of the notice of foreclosure sale; that the mortgage is a "Fannie Mae" form mortgage; that the November 30, 2011, letter from Carrington contained the incorrect amount that the Turners could pay to cure their default; and that Croft's affidavit failed to show that he had personal knowledge of the Turners' mortgage and the events occurring in this case. The record does not reflect that any of these assertions or arguments were raised before the trial court.
Instead, some or all of these arguments and factual assertions have been raised, almost verbatim, in appellate briefs filed by counsel for the Turners in other appeals unrelated to the present case. See, e.g., Walker v. North American Sav. Bank, 142 So. 3d 590 (Ala. Civ. App. 2013), Surles v. Bayview Loan Servicing, LLC (No. 2111234, Nov. 8, 2013), 171 So. 3d 694 (Ala. Civ. App. 2013) (table), and Bennett v. Deutsche Bank Nat'l Trust Co., (No. 2100843, April 6, 2016), 143 So. 3d 870 (Ala. Civ. App. 2012) (table). Although those other cases are similar to the present case in that they involved foreclosures on mortgages and claims for ejectment, they are not identical to the present case and they involved different facts. Nonetheless, it is apparent that the Turners' attorney, despite being afforded two seven-day extensions from this court to file the Turners' appellate brief, utilized arguments and facts raised in appellate briefs in those and other cases, changed dates and the names of the parties,[2] and inserted those arguments and facts in the Turners' brief in the present appeal as a basis for reversing the trial court's summary judgment even though those facts and arguments are not supported by the record.[3]
*202 "Arguments that are not appropriately tailored to each individual client and the facts of each case not only do the client a grave disservice, but they also undermine the principle of judicial economy." United States v. Coleman, 610 Fed.Appx. 347, 356 n.3 (5th Cir. 2015) (not selected for publication in the Federal Reporter ). Furthermore, "[t]his Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992). " 'It is a fundamental rule of appellate procedure that, regardless of [the] merits of [the] appellant's contentions, appellate courts will not review questions not decided by the trial court.' " Etherton v. City of Homewood, 700 So. 2d 1374, 1377-78 (Ala. 1997) (quoting Bevill v. Owen, 364 So. 2d 1201, 1203 (Ala. 1979) ). As a result, these arguments cannot be considered on appeal. Additionally, as to the Turners' attempt to challenge aspects of Croft's affidavit, the Turners did not file a motion to strike the affidavit in the trial court. Because the Turners "did not move to strike the affidavit at issue, this court will not hold the trial court in error for considering that affidavit in determining whether to enter a summary judgment." Inline Elec. Supply Co. v. Eskildsen, 198 So. 3d 524, 528 (Ala. Civ. App. 2015). Accordingly, we address below only those arguments that, according to the record, the Turners raised before the trial court.
II. Breach of the Mortgage
The Turners contend that they produced substantial evidence in opposition to Wells Fargo's summary-judgment motion showing that they were not in breach of the mortgage and that, instead, Wells Fargo's actions caused them to default, which, in turn, led to the foreclosure. The Turners point to the evidence they submitted in opposition to the summary-judgment motion showing that they tendered their monthly mortgage payments, along with payment of a $100 late fee, to Carrington in October 2011 and November 2011, and that they attempted to make mortgage payments in subsequent months. The Turners assert that this evidence shows that they were not in breach of the mortgage and that, instead, Carrington's failure to accept the payments resulted in an improper and wrongful foreclosure.
The Turners, however, do not dispute the evidence presented by Wells Fargo that they tendered three checks to Carrington containing insufficient funds between August 1, 2011, and October 5, 2011. The Turners do not contest that they failed to include in their October 27, 2011, check to Carrington the $90 charge for tendering three checks with insufficient funds. The Turners do not dispute that Carrington returned the October 27, 2011, check to the Turners because they failed to include payment of the $90 insufficient-check charges. Furthermore, the Turners do not contest that they tendered only a single month's payment in the November 28, 2011, check and that that check failed to include funds to satisfy the October payment, the late fees, and funds to cover the $90 insufficient-checks charges. The Turners do not claim that the late fees or *203 insufficient-check charges were not permitted under the terms of the note.
Section 1 of the mortgage authorized Wells Fargo, through Carrington as the loan servicer, to require "that any or all subsequent payments due under the note and [the mortgage] be made ... [by] certified check ...." after a check was returned unpaid. On November 30, 2011, Carrington sent the Turners a notice of intent to accelerate the amount due under the note and stated that the Turners could cure the default by tendering certified funds in the amount of $4,545.36 (representing two monthly payments of $2,127.68, plus three $30 insufficient-check charges, and two $100 late charges). The Turners do not dispute that they failed to tender certified funds to Carrington to cure the default in the amount stated in the November 30, 2011, notice. Thus, the evidence establishes that the Turners failed to pay the entire amount due in the October 27, 2011, check, that the Turners were in default on the mortgage, that the Turners failed to cure the default with paying the debt by certified funds, and that Wells Fargo did not breach the mortgage by enforcing the provisions of Section 1. Accordingly, the trial court did not err in entering the summary judgment for Wells Fargo on the basis that Wells Fargo breached the mortgage.
III. Proper Notice of the Foreclosure
The Turners contend that Wells Fargo failed to give the Turners proper notice of foreclosure that is required pursuant to Section 22 of the mortgage, which states, in part, that such notice shall "inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Turners contend that the November 30, 2011, notice of intent to accelerate sent by Carrington failed to include this explicit language. They contend that, because they did not receive proper notice required by the mortgage, Wells Fargo was precluded from foreclosing on the property and that the foreclosure sale is void.
The November 30, 2011, notice stated, in pertinent part, that "[y]ou have the right to reinstate your loan after legal action has begun. You also have the right to assert in foreclosure, the non-existence of a default or any other defense to acceleration and foreclosure."
"Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts." Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So. 2d 216, 218 (Ala. 1982). The November 30, 2011, notice substantially complied with the notice requirement of Section 22, and, therefore, Wells Fargo, through Carrington, substantially complied with the requirements of that section of the mortgage by sending the notice that included the aforementioned language. Therefore, there was no genuine issue of material fact before the trial court to support the Turners' claim that the notice was defective.
IV. Real Party in Interest
The Turners also contend that Wells Fargo did not produce substantial evidence in support of its motion for a summary judgment showing that it was a holder of the note and the mortgage at the time of the first two publications of the notice of the foreclosure sale in the Alabama Messenger; thus, the Turners contend, a genuine issue of material fact exists as to whether Wells Fargo had authority to foreclose on the property.
In *204 Gray v. Federal National Mortgage Ass'n, 143 So. 3d 825 (Ala. Civ. App. 2014), this court addressed a nearly identical issue, stating:
"In Harris v. Deutsche Bank National Trust Co., 141 So. 3d 482, 491 (Ala. 2013), our supreme court reasoned:
" 'The Harrises also argue that the power of sale described in the mortgage was given by the Harrises as part of the security for the repayment of the debt evidenced by the note and can be "executed" only by the trustee if it was the party entitled to the money thus secured. They cite § 35-10-12, Ala. Code 1975, which states that the power to sell lands given in a mortgage "is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured." In Carpenter v. First National Bank, 236 Ala. 213, 181 So. 239 (1938), this Court applied the predecessor to § 35-10-12, stating:
" ' "A power of sale in a mortgage of real estate is a part of the security, and passes to any one who by assignment or otherwise becomes entitled to the money secured. Code 1923, § 9010.
" ' "But an agent of such holder to whom the mortgage is delivered merely for the purpose of foreclosure, having no ownership of the debt, is not authorized to foreclose in his own name, and execute a deed in his name to the purchaser. Ownership of the debt does not pass to such agent merely because the note is indorsed in blank. Such foreclosure is ineffective, and a court of equity may take jurisdiction for the purpose of foreclosure.'
" ' 236 Ala. at 215, 181 So. at 240 (emphasis added). The foreclosure deed in this case was executed by the trustee in its own name, not on behalf of the lender, SouthStar, or any other party to which SouthStar may have assigned the note. The deed was effective to transfer title and to foreclose the rights of the mortgagor, therefore, only if the trustee, in its own name, was entitled to receive the money secured by the note at the time it executed and delivered that deed.
" 'The parties agree in their briefs, however, and we accept for purposes of this case, that the mortgage given MERS "solely as a nominee for Lender and Lender's successors and assigns" did not entitle MERS to the money secured by the mortgage. Accordingly, the subsequent assignment of that mortgage by MERS to the trustee did not accomplish an assignment of that right to the trustee. The trustee in fact concedes that summary judgment was inappropriate in this case and that on the state of the current record there is a genuine issue of material fact as to whether the trustee received an assignment of the note so as to have entitled it to execute the power of sale in its own name. (It asserts that, if this case is returned to the trial court, it will introduce "conclusive evidence" of its receipt as early as 2005 of the debt evidenced by the original note signed by the Harrises.) The summary judgment entered by the trial court therefore is due to be vacated and the case remanded for a determination as to whether the trustee received an assignment of the right to receive the money secured by the note, and thus the power to execute the corresponding power of sale in its own name, before executing and delivering the foreclosure deed.'
"(Footnote omitted.) See also Ex parte BAC Home Loans Servicing, LP, 159 So. 3d 31, 35-36 (Ala. 2013) (holding that *205 the right of the foreclosing entity to conduct a foreclosure sale must be proven in order to show that the buyer at a foreclosure sale has superior legal title and a cause of action to eject the debtor). Further, in Coleman v. BAC Servicing, 104 So. 3d 195 (Ala. Civ. App. 2012), this court explained:
" 'Alabama law specifically contemplates that there can be a separation. See § 35-10-12 and Harton [v. Little, 176 Ala. 267, 57 So. 851 (1911) ]. The Restatement (Third) of Property: Mortgages takes the position that a note and mortgage can be separated but that "[t]he mortgage becomes useless in the hands of one who does not also hold the obligation because only the holder of the obligation can foreclose." Restatement (Third) of Property: Mortgages § 5.4, Reporter's Note-Introduction, cmt. a at 386. The Restatement explains: " 'The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.' " Id. at 387 (quoting Best Fertilizers of Arizona, Inc. v. Burns, 117 Ariz. 178, 179, 571 P.2d 675, 676 (Ct. App.), reversed on other grounds, 116 Ariz. 492, 570 P.2d 179 (1977) ).'
" 104 So. 3d at 205."
143 So. 3d at 830-31.
"An assignee of a debt secured by a mortgage may execute the right to foreclose. § 35-10-1 and § 35-10-12, Ala. Code 1975. ' "The clear test of the right of an assignee of the mortgage to exercise the power of sale under [ § 35-10-1, Ala. Code 1975,] is that such assignee is entitled to receive the money secured by the mortgage." ' Ex parte GMAC Mor[t]g., LLC, 176 So. 3d 845, 848 (Ala. 2013) (quoting Kelly v. Carmichael, 217 Ala. 534, 537, 117 So. 67, 70 (1928) ). ...
"....
" 'In Alabama, a note secured by a mortgage is a negotiable instrument. Thomas v. Wells Fargo Bank, N.A., 116 So. 3d 226, 233 (Ala. Civ. App. 2012). A holder of a note secured by a mortgage is entitled to enforce the terms of the note. Perry v. Federal Nat'l Mortg. Ass'n, 100 So. 3d [1090,] 1094 [ (Ala. Civ. App. 2012) ].'
" Sturdivant v. BAC Home Loan Servicing, LP, 159 So. 3d 47, 55 (Ala. Civ. App. 2013) (footnote omitted); see § 7-3-301, Ala. Code 1975 (providing that a holder is a 'person entitled to enforce' the negotiable instrument). The negotiable instrument must have been either issued or negotiated to a person or an entity in order for the transferee to become a holder. § 7-3-302, Ala. Code 1975; Stone v. Goldberg & Lewis, 6 Ala. App. 249, 259, 60 So. 744, 748 (1912) (opinion on rehearing) ('[T]he instrument must be "negotiated" to the holder in order for the holder to be a "holder in due course." '). A negotiation requires a transfer of possession and an indorsement by the holder if the instrument is payable to an identified person or transfer by possession only if the instrument is payable to bearer. § 7-3-201(b), Ala. Code 1975."
Smalls v. Wells Fargo Bank, N.A., 180 So. 3d 910, 915-16 (Ala. Civ. App. 2015).
The evidence shows that the note was indorsed in blank by a representative of New Century. Croft testified that the note and the mortgage were transferred to Wells Fargo on July 1, 2007. On February 1, 2012, before the publication of notice of foreclosure and approximately one month before the foreclosure sale, New Century executed an assignment of the mortgage and the note to Wells Fargo. The assignment was recorded in the probate court on February 15, 2012. The evidence, therefore, establishes that Wells Fargo was a *206 holder of the note secured by the mortgage. Accordingly, Wells Fargo was entitled to enforce the terms of the note and mortgage and to foreclose on the property. We therefore conclude that Wells Fargo presented substantial evidence showing that it was a real party in interest and that Wells Fargo possessed the power to sell the property in foreclosure.
V. Wells Fargo's Renewed Motion for a Summary Judgment
The Turners contend that the trial court entered a summary judgment in favor of Wells Fargo without allowing them an opportunity to respond to Wells Fargo's renewed summary-judgment motion and without setting the renewed motion for a hearing. Rule 56(c)(2), Ala. R. Civ. P., provides:
"The motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing, except that a court may conduct a hearing on less than ten (10) days' notice with the consent of the parties concerned. Subject to subparagraph (f) of this rule, any statement or affidavit in opposition shall be served at least two (2) days prior to the hearing."
The Turners contend that the renewed motion filed by Wells Fargo on January 20, 2015, contained evidentiary submissions that had not been submitted with the original motion. The Turners contend that, under Rule 56, the trial court should have provided them with an opportunity to refute the additional evidence.
A review of the renewed motion filed by Wells Fargo, however, shows that Wells Fargo merely refiled the same summary-judgment motion and brief in support thereof that it had filed on August 16, 2013. Furthermore, the renewed motion was filed on January 20, 2015, and the judgment was not entered until March 18, 2015. We note also that Wells Fargo refiled its replies to the Turners' 2013 responses to its original summary-judgment motion without making any substantive changes in the argument or presenting any additional evidentiary materials.
Before Wells Fargo filed its renewed motion, the Turners already had filed responses to the summary-judgment motion and the trial court had held a hearing on September 6, 2013, at which counsel for both parties appeared. Because the renewed motion did not contain any new arguments or additional evidentiary submissions that were not part of the initial summary-judgment motion, the trial court did not err by failing to hold an additional hearing following the filing of the renewed motion.
Accordingly, we will not reverse the trial court on the basis that it did not provide the Turners with an opportunity to respond to Wells Fargo's renewed summary-judgment motion.
Conclusion
For the foregoing reasons, the summary judgment entered by the trial court in favor of Wells Fargo is affirmed.
AFFIRMED.
Thompson, P.J., and Thomas and Moore, JJ., concur.
Pittman, J., recuses himself.

The record shows that only Trenton Turner submitted an affidavit in opposition to Wells Fargo's summary-judgment motion.

In some instances in the Turners' appellate brief, not even the names of the parties and the specific dates were changed from briefs filed in the other appeals.

Also notable is that the table of authorities in the Turners' appellate brief is identical to the table of authorities in the appellate brief filed in Walker, supra, including the references to the page numbers. Additionally, some of the cases in the table of authorities in the brief in the present case are not actually cited in the brief, and some of the cases cited in the argument section of the brief are not listed in the table of authorities. Furthermore, in some parts of the Turners' appellate brief, the Turners provide incorrect page numbers for citations to the record. For instance, in the argument section of the brief, the Turners reference page numbers that were used in the brief in Walker and that do not correlate to the proper location of the document cited in the record in the present case.